**Arthur Garcia SANCHEZ, Appellant,**

v.

**The STATE of Texas.**

No. 050–01.

Court of Criminal Appeals of Texas, En Banc.

Nov. 12, 2003.

Mark Stevens, Stephanie L. Stevens, San Antonio, for Appellant.

Daniel Thornberry, Assistant District Attorney, San Antonio, Matthew Paul, State's Attorney, Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, JOHNSON, KEASLER, HOLCOMB, and COCHRAN, JJ., joined.

This case presents the issue, whether the doctrine of a "right not recognized" permits a defendant to complain for the first time on appeal that the charging instrument failed to allege the required culpable mental state. We hold that it does not.

We first must discuss the procedural history of this case. The appellant originally was charged with official oppression under Penal Code section 39.03(a)(3), (c).

The appellant filed a motion to quash the indictment, which the trial court granted in part and denied in part. The State amended the indictment to allege that:

on or about the 1st day of August, A.D., 1994, through on or about the 15th day of February, A.D., 1995, ARTURO SANCHEZ, while acting under color of his office as a public servant, to-wit: an officer, employee and agent of government, namely: Chairman and board member of the Board of Trustees of VIA METROPOLITAN TRANSIT, did intentionally subject DIANE GONZALEZ to sexual harassment, namely: unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature, by stating to DIANE GONZALEZ (hereinafter referred to as "COMPLAINANT") to the effect: that if COMPLAINANT did not have a sexual affair with him he would fire her; that to get an office, a secretary and a raise COMPLAINANT must have a sexual affair with him; that he had a sexual affair with another VIA employee and he would have a sexual affair with COMPLAINANT also; that he would have a sexual affair with COMPLAINANT; that COMPLAINANT should have a sexual affair with him because people already thought they were having a sexual affair; that COMPLAINANT must put on lipstick; that he would like COMPLAINANT to wear low-cut dresses; that he would like COMPLAINANT to wear black pantyhose and silk blouses because she looked better in them; that upon seeing a bruise on COMPLAINANT'S leg, that he asked COMPLAINANT if she was bruised from rough sex with her husband, and that he liked rough sex; and by touching DIANE GONZALEZ with his hand on her face, submission to which was explicitly and implicitly made a term and condition of DIANE GONZALEZ' exercise and enjoyment of her rights, privileges, powers and immunities.

The appellant filed a motion to quash the amended indictment, which the trial court denied. The jury convicted the appellant and assessed punishment at one year in county jail and a $300 fine. The sentence was suspended and the appellant was placed on community supervision for two years.

On appeal (*Sanchez I*), the court of appeals reversed, holding that the statute's provision regarding sexual harassment was (1) unconstitutionally vague on its face and as applied in violation of the Fourteenth Amendment to the United States Constitution and (2) unconstitutionally overbroad in violation of the First Amendment to the United States Constitution.[1] We granted review (*Sanchez II*) and, holding that the provision in question was constitutional, reversed the court of appeals' judgment and remanded the cause for proceedings consistent with our opinion.[2] Of relevance to this case is our discussion in *Sanchez II* of the required mental states under section 39.03(a)(3), (c). We held that, with respect to the nature of conduct, "the statute requires intent on the part of the perpetrator that the conduct be of a sexual nature, not merely that the recipient perceive the conduct as sexual."[3] The required culpable mental state for the "unwelcome" nature of the conduct is that the defendant

---

1. *See Sanchez v. State,* 974 S.W.2d 307 (Tex. App.-San Antonio 1998) (*Sanchez I*).

2. *See Sanchez v. State,* 995 S.W.2d 677 (Tex. Cr.App.1999) (*Sanchez II*).

3. *Id.,* at 685.

must be aware that his conduct is in fact unwelcome.[4]

On remand (*Sanchez III*), the court of appeals permitted the appellant to file a new brief, in which the appellant raised two new points of error. He claimed that the trial court erred in overruling his motion to quash because the indictment did not charge an offense and because the indictment did not specify what "rights, privileges, powers, or immunities" were at issue in the case. The court of appeals sustained these points and again reversed the conviction and remanded the cause.[5] We granted the State's petition for discretionary review to determine whether the appellant preserved for review his complaint that the indictment failed to allege a culpable mental state, and whether the court of appeals conducted the proper harm analysis in sustaining the appellant's second point of error.[6]

### Preservation of Error

We express no opinion as to whether the indictment was defective. The question is whether the appellant preserved his first complaint about the indictment for appeal. In other words, did his motion raise a substantive defect in the indictment as required under Code of Criminal Procedure article 1.14(b)?

The article provides:

If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding ....[7]

In *Cook v. State*, we discussed the historical significance of article 1.14(b):

Prior to 1985, this Court consistently held that "substantive" defects in the charging instrument failed to vest the trial court with jurisdiction and, therefore, a conviction on a substantively defective charging instrument could be challenged for the first time on appeal.... This rule developed over more than a century of decisions in which we interpreted art. I, § 10 [of the Texas Constitution] to created a "constitutional" requirement that a charging instrument allege all elements of the offense in order to constitute an indictment.... Accordingly, where the charging instrument omitted an element of the offense the indictment was void and the trial court lacked jurisdiction....

Frustrated with the common practice of defendants withholding substantive defects at trial in order to vitiate the conviction, the Texas Legislature in 1985 proposed an amendment to art. V, § 12 of the Texas Constitution which authorized the Legislature to prescribe by statute the effects of substantive defects in the charging instrument. The amendment provided:

An indictment is a written instrument presented to a court by a grand jury charging a person with the commis-

---

4. *Ibid.*

5. *Sanchez v. State,* 32 S.W.3d 687 (Tex.App.-San Antonio 2000) (*Sanchez III*).

6. We granted review of the State's first and third grounds:
 (1) The court of appeals erred in holding that the appellant preserved for review his contention that the amended indictment failed to allege conduct that was criminal because it failed to allege the culpable mental state.
 (3) The court of appeals did not conduct a proper harm analysis of the alleged notice defect in the indictment. Pet. at 3.

7. Tex.Code Crim. Proc. art. 1.14(b).

sion of an offense. An information is a written instrument presented to a court by an attorney for the State charging a person with an offense. The practice and procedures relating to the use of indictments, including their contents, amendment, sufficiency and requisites are provided by law. The presentment of an indictment or information to a court invests the court with jurisdiction of the cause.

Art. V, § 12(b). In tandem with the constitutional amendment, the Legislature also drafted implementing legislation in the form of an amendment to [Texas Code of Criminal Procedure article 1.14].... Art. 1.14(b) automatically took effect upon the voters [*sic*] approval of the amendment to art. V, § 12.[8]

Thus, the appellant had an affirmative duty to object to any defect in the indictment before trial, and a failure to do so would prevent him from raising a claim of a defect for the first time on appeal.

The court of appeals held in *Sanchez III* that the appellant's motion to quash was sufficient to preserve the right to complain of the defect in the indictment for appellate review despite the fact that the motion did not specify the indictment's failure to allege the required mental state of awareness as required by *Sanchez II*. The court provided two reasons for its holding.

■ First, based on the language of the motion, the appellant "was clearly seeking to ascertain the nature and the cause of the accusations against him and it is apparent from the context that the trial court and the prosecutor knew or should have known the basis of appellant's motion."[9] We disagree.

The fifth paragraph of the motion complained that the indictment failed to allege criminal conduct:

The indictment is defective because it is unconstitutionally vague in violation of the Fourteenth Amendment of the United States Constitution. The vagueness allows the prosecutors to use their own judgment, aversions, or preferences to determine what statements are unwelcome sexual advances and requests for sexual· favors.... Because the indictment attempts to criminalize noncriminal conduct and provides no guidance on how to proceed, it is defective.

The motion does not object to the specific defect of which the appellant now complains—that the indictment fails to allege a culpable mental state. The trial court held a pretrial hearing on the motion in which defense counsel made the following argument with respect to Paragraph Five of the motion:

We still don't have definitions of unwelcomed [*sic*] sexual acts or requests for sexual favors. So, what we have is the prosecutor has put in what they believe to be those items, and when you look at the amended indictment, they seem to be criminalizing a broad spectrum of conduct here that I think a normal person of ordinary intelligence would not find to be criminal.

The argument focuses on the definitions of the elements of "unwelcome" and "sexual acts." There is no discussion of the indictment's omission of the culpable mental state for the "unwelcome" nature of the conduct. Based on the language in the motion and defense counsel's supporting arguments reflected in the record, the court erred in summarily concluding that the motion nevertheless was specific

8. *Cook v. State,* 902 S.W.2d 471, 476 (Tex.Cr. App.1995).

9. *Sanchez III,* 32 S.W.3d at 697 (citations omitted).

enough to apprise the trial court and the State of the appellant's objection.

The court of appeals' second basis for its holding is of more legal significance. The court said, "[N]o waiver can be inferred or appellant faulted for failure to point out in his motion to quash the omission in the indictment of elements later developed by case law when the claim would have been novel and the claim would have been futile." [10] In other words, the court asserts that the appellant should not be penalized for failing to object to the indictment's compliance with requirements that were not "developed" until our decision in *Sanchez II*. However, as we shall explain, this "right not recognized" doctrine is inconsistent with our current law of error preservation.

◼ The courts of every jurisdiction in this country have some doctrine that permits appellate courts to consider claims that fundamental rights were violated without objection. In the criminal law of this state, such errors are called "fundamental errors." Before 1993 this Court had recognized more than a dozen kinds of fundamental error. This jurisprudence "reflects piecemeal developments that each have somewhat different rationales. The overall situation, then, simply [could] not be explained by reference to any unifying principle or principles. *Marin v. State*[, 851 S.W.2d 275 (Tex.Cr.App.1993),] suggest[ed] both the need to reconsider this case law and a framework for that reconsideration." [11] As we have said elsewhere: [12]

> *Marin* has been a watershed decision in the law of error-preservation. After *Marin* we have held that a right that formerly was thought to be "waivable only" actually requires an objection at trial. [13] We have held that some requirements that were formerly held to be absolute requirements are not. [14] We have held that a party may be estopped from relying on an absolute requirement. [15] On the other hand, we have recognized three more absolute requirements since *Marin:* a constitutional requirement that a district court must conduct its proceedings at the county seat, [16] the constitutional prohibition of ex post facto laws, [17] and certain

10. *Id.*, at 697 (citing *Ex parte Chambers*, 688 S.W.2d 483, 486 (Tex.Cr.App.1984) (Campbell, J., concurring)).

11. *Saldano v. State*, 70 S.W.3d 873, 887–88 (Tex.Cr.App.2002) (quoting GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE-CRIMINAL PRACTICE AND PROCEDURE § 42.129 (1995)).

12. *Id.*, at 888–89 (footnotes renumbered).

13. *See Gonzalez v. State*, 8 S.W.3d 640 (Tex. Cr.App.2000) (claim of multiple punishments in violation of Fifth Amendment's Jeopardy Clause, which was based on court's charge that allowed a general verdict to be returned on alternative theories of offense).

14. *See Hatch v. State*, 958 S.W.2d 813 (Tex. Cr.App.1997) (statutory requirement of verdict by twelve jurors); *Ex parte McJunkins*, 954 S.W.2d 39 (Tex.Cr.App.1997) (statutory requirement of concurrent sentencing for offenses tried in a single criminal action).

15. *See Prystash v. State*, 3 S.W.3d 522 (Tex.Cr. App.1999) (statutory requirement of jury charge), *cert. denied*, 529 U.S. 1102, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000); *State v. Yount*, 853 S.W.2d 6 (Tex.Cr.App.1993) (statute of limitation).

16. *See Stine v. State*, 908 S.W.2d 429 (Tex.Cr. App.1995). The Court could not agree on a basis for this holding. Three judges held the requirement was jurisdictional, *see id.*, at 430 (opinion of Overstreet, J.); one judge held the requirement was "systemic" but not jurisdictional, *see id.*, at 433 (opinion of Meyers, J.); a fifth judge joined the judgment without opinion, *see ibid.* (Maloney, J.).

17. *See Ieppert v. State*, 908 S.W.2d 217 (Tex. Cr.App.1995).

constitutional restraints on the comments of a judge.[18]

We now consider questions of fundamental error in the *Marin* framework.[19]

 In *Marin,* we identified and defined the three categories of rights belonging to litigants. The first category, "absolute requirements and prohibitions" or "systemic" rights, are those rights "which are essentially independent of the litigants' wishes. Implementation of these requirements is not optional and cannot, therefore, be waived or forfeited by the parties. The clearest cases of ... systemic requirements are laws affecting the jurisdiction of the courts."[20] Systemic requirements "are to be observed even without partisan request" and cannot "lawfully be avoided even with partisan consent."[21] Therefore, an appellant may "complain that an absolute requirement or prohibition was violated, and the merits of his complaint on appeal are not affected by the existence of a waiver or forfeiture at trial."[22]

 In the second category, *Marin* classifies a litigant's "waivable" rights. "A principle [*sic*] characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone. Instead, if a defendant wants to relinquish one or more of them, he must do so expressly. His rights to the assistance of counsel and to a jury trial are of this kind."[23] "Although a litigant might give [these rights] up, ... he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently" and the trial court "has an independent duty to implement them absent an effective waiver by [the litigant]."[24] These rights are not systemic, for they may be waived.

Waivable rights ... do not vanish so easily [as forfeitable ones]. Although a litigant may give them up, and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record. He need make no request at trial for the implementation of such rights, as the judge has an independent duty to implement them absent an effective waiver by him. As a consequence, failure of the judge to implement them at trial is an error which might be urged on appeal whether or not it was first urged in the trial court.[25]

██ The remaining category consists of "forfeitable" rights. A party must "insist upon [the implementation of these rights] by objection, request, motion, or some other behavior calculated to exercise the right in a manner comprehensible to the system's impartial representative, usually the trial judge.... The trial judge as an institutional representative has no duty to enforce forfeitable rights unless requested to do so."[26] Thus, when a defendant fails to assert his forfeitable rights at

18. *See Blue v. State,* 41 S.W.3d 129 (Tex.Cr. App.2000). The Court could not agree on the basis of this requirement. Four judges held that the judge's comments tainted the presumption of innocence and were fundamental error of constitutional dimension, *see id.* at 129 (opinion of Johnson, J.); a fifth judge held that the judge's comments violated the right to an impartial judge, *see id.,* at 135 (opinion of Keasler, J.).

19. *See Saldano,* 70 S.W.3d, at 889.

20. *Marin,* 851 S.W.2d, at 279.

21. *Id.,* at 280.

22. *Id.*

23. *Id.,* at 278–79 (citations omitted).

24. *Id.,* at 280.

25. *Ibid.*

26. *Id.,* at 279–80.

trial, "no error attends failure to enforce them and none is presented for review on appeal."[27]

The right to be charged by an instrument that is free of defects, errors, and omissions is neither a "systemic" requirement nor a "waivable" right. By the requirement of an act of the legislature under specific authority granted by an amendment of the Constitution, any error in the charging instrument must be objected to in a timely (in this case, before trial) and specific manner, and any unobjected-to error in the instrument is not "fundamental."

The "right not recognized" exception to the contemporaneous-objection rule relates to a kind of fundamental error that is contrary to a specific act of the legislature, and that *Marin* generally eliminated from our jurisprudence. The court of appeals should not have relied on the doctrine to support its holding on the first point of appeal.

### Harm Analysis

In his second point of error on appeal, the appellant complained that the trial court erred in denying his motion to quash because the indictment failed to specify which "rights, privileges, powers, or immunities" were at issue in the case.[28] The court of appeals sustained this point.[29] Because the State does not challenge the holding that the trial court erred, we do not review that holding. Our review is of the question of harmless error. We be-

lieve the court of appeals erred in its harm analysis.

A ground for an exception to the form of an indictment exists if the indictment fails to allege facts sufficient to give the defendant notice of the precise offense with which he is charged.[30] Under Code of Criminal Procedure article 21.19, even when there is a showing that the trial court erred in overruling a challenge to the indictment based on a defect in form, a conviction may be affirmed as long as the defect did not prejudice the defendant's substantial rights.[31] In *Adams v. State*, we explained the proper harm analysis under article 21.19:

> The first step ... is to decide whether the charging instrument failed to convey some requisite item of "notice." If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether in the context of the case, this had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact.[32]

The court of appeals compared the standards of harm under *Adams* (and article 21.19) and the Rule of Appellate Procedure 44.2(a) and (b).[33] Characterizing the defects in the indictment in this case as defects of substance, the court concluded, "If the error here is subject to harm analysis at all, it matters not what harmless error rule is applied. Under any standard of review applied, the error would be harmful."[34] In an apparent reference to the *Adams* rule, the court held, "It is clear from the record that the omitted elements and the lack of required notice impacted

27. *Id.*, at 280.

28. *See Sanchez III*, 32 S.W.3d at 690.

29. *See id.*, at 698–99.

30. *See Adams v. State*, 707 S.W.2d 900, 901 (Tex.Cr.App.1986).

31. Tex Code Crim Proc. art. 21.19; *see also Adams*, 707 S.W.2d at 901–04.

32. *Adams*, 707 S.W.2d at 903.

33. *See Sanchez III*, 32 S.W.3d at 699–700.

34. *Sanchez III*, 32 S.W.3d at 700.

appellant's defense." [35] But the court's support for its conclusion focused entirely on the effect of the indictment on the jury charge. The court cited no evidence to show how the defects in the indictment negatively affected the appellant's preparation for, or presentation of, his defense. A discussion of error in the jury charge is proper in a case where charge error is at issue. Here we are faced with error in the indictment. Because the court of appeals did not discuss relevant evidence that, in its opinion, made the impact of the indictment error on the appellant's defense "clear from the record," a further analysis and discussion of the record is needed.

### Conclusion

The court of appeals erred in its conclusion that the appellant's motion to quash was sufficient to raise the defect of the omission of a culpable mental state in the indictment. Furthermore, because the "right not recognized" doctrine conflicts with the law, the defect was not "fundamental" error. The appellant did not preserve error, if any, on this issue under article 1.14(b) and was not entitled to raise his first point. On the second point, the court of appeals' harm analysis did not correctly apply the *Adams* standard in reviewing the defect relating to the statutory elements "rights, privileges, powers, and immunities." Therefore, the judgment of the court of appeals is vacated, and the case is remanded for reconsideration of the issue of harm on the appellant's second point.

Vacated and remanded to the court of appeals.

HERVEY, J., did not participate.