**Jessica L. TELLEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–03–00853–CR.

Court of Appeals of Texas, San Antonio.

June 29, 2005.

Patrick Barry Montgomery, San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Criminal Dist. Atty., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice (concurring in the judgment only), SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SARAH B. DUNCAN, Justice.

Jessica Tellez appeals the judgment revoking her deferred adjudication community supervision, convicting her of possession of a controlled substance of one to four grams with the intent to deliver, fining her $1000, sentencing her to five years in the Texas Department of Criminal Justice—Institutional Division, and finding that she "used or exhibited a deadly weapon in the commission of the offense or during immediate flight therefrom." We hold the State's failure to give Tellez notice of its intent to seek a deadly weapon finding before her plea was accepted precluded the trial court from entering a deadly weapon finding at Tellez's adjudication hearing. We therefore modify the judgment to delete the deadly weapon finding and, as so modified, affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

According to the evidence introduced at Tellez's plea hearing, when the police executed a search warrant on December 18, 2001 at 1003 Essex, they apprehended Jessica Tellez in her bedroom and found three bags containing cocaine, one bag containing marijuana, a palmscale, empty Ziploc baggies, and a loaded handgun. Tellez was subsequently indicted for possession with intent to deliver and possession of a controlled substance (cocaine) of one to four grams. The indictment does not allege that Tellez used or exhibited a deadly weapon during the course of committing either offense or from immediate flight therefrom.

After Tellez applied for community supervision, she and the State entered into a plea bargain agreement. Under the agreement, Tellez agreed to plead guilty or nolo contendere, to allow the State to prove its case by written stipulations, to pay restitution for drug testing, and to undergo a TAIP evaluation; the State agreed to proceed on the first count only (possession with intent to deliver) with punishment assessed at five years and to "make no recommendation o[n] [Tellez's] deferred adjudication/community supervision application." Outside the agreement, Tellez and the State agreed to a $1000 fine and 300 hours of community service. The plea bargain form contains a blank to the left of "Affirmative Finding of Deadly Weapon or 3G offense, Defendant not eligible for supervision under CCP 42.12, Sec. 3"; but the blank is not checked.

At the ensuing plea hearing on July 1, 2002, Tellez pleaded no contest to possession with intent to deliver; and the trial court accepted her plea. After the State introduced the waiver and stipulations, the trial court found "the evidence is sufficient to sustain a finding of guilt" but "h[e]ld in abeyance any finding at this point in time until [it] g[o]t a report from the Probation Office on those matters outside the plea bargain." After receiving that report, at a July 22, 2002 hearing, the trial court adopted defense counsel's recommendation and placed Tellez on deferred adjudication for five years.

On May 8, 2003, the State moved to revoke Tellez's community supervision and adjudicate her guilt, alleging that Tellez violated the first condition of her probation by committing the offense of assault. On August 29, 2003, the State filed its Notice of Intent to Seek an Affirmative Finding of the Use or Exhibition of a Deadly Weapon. During the ensuing hearing, Tellez was not asked to, and therefore did not, enter a

plea regarding the deadly weapon allegation in the State's Notice. Nonetheless, after Tellez pleaded "true" to the alleged violation and the State presented its evidence, the trial court found Tellez guilty of possession with intent to deliver, then assessed her punishment at five years and made an affirmative deadly weapon finding. Consequently, Tellez "must serve a longer period, without consideration of good conduct time, before [she] may be released on parole." *Coleman v. State*, 145 S.W.3d 649, 652 (Tex.Crim.App.2004) (citing TEX. GOV'T CODE ANN. § 508.145(d) (Vernon 2004)). Tellez appeals, making two arguments: first she argues that the trial court erred in making a deadly weapon finding that was not charged or requested before she entered her original plea; and second, in anticipation of the State's waiver argument, she argues that her trial counsel was ineffective in failing to object to the deadly weapon finding in the trial court.

## JURISDICTION

■ The State first argues that we lack jurisdiction over Tellez's appeal because the trial court's Rule 25.2(d) certificate specifically states "this order is not appealable." But this statement is not only incorrect, it is misleading. What the trial court's certificate in fact states is "this criminal case ... is not a plea-bargain case, and the defendant has the right of appeal ... *except* ... this is an adjudication of guilt following deferred adjudication and this order is not appealable." When read in context, "this order" plainly refers only to the order adjudicating guilt; thus, the trial court's certification properly recognizes that Tellez may appeal "aspects of the 'second phase to determine punishment.'" *Kirtley v. State*, 56 S.W.3d 48, 51 (Tex.Crim.App.2001).

We recognize a deadly weapon finding is not a part of a sentence for purposes of determining whether the State has the right to appeal its omission under article 44.01(b), which permits "[t]he [S]tate ... to appeal a sentence in a case on the ground that the sentence is illegal." TEX. CODE CRIM. PROC. ANN. art. 44.01(b) (Vernon Supp.2004); *State v. Ross*, 953 S.W.2d 748, 752 (Tex.Crim.App.1997) ("hold[ing] for art. 44.01(b), ... a deadly weapon finding is not part of a sentence"). But the issue before us, for jurisdictional purposes, is not whether Tellez "appeal[s] a sentence"; the question is whether Tellez appeals "aspects of the 'second phase to determine punishment.'" *Kirtley*, 56 S.W.3d at 51. We hold that she does. *See Luken v. State*, 780 S.W.2d 264, 268 (Tex.Crim.App. 1989) (observing "that '[a]n affirmative finding can be and is perhaps more suited to be a punishment issue'").

## WAIVER

■ Before we proceed to the merits of Tellez's first complaint, we must first address the State's argument that Tellez waived her complaint by failing to object in the trial court.

■ It is clear the State must provide a defendant with written notice of its intent to seek a deadly weapon finding; but it is equally clear the required notice can be waived. *See Ex parte Minott*, 972 S.W.2d 760 (Tex.Crim.App.1998). As the court stated in *Minott*: "As in *McJunkins*, a litigant waives any complaint as to not receiving notice in written form when he agrees to a deadly weapon finding as part of a negotiated plea." *Id.* at 762. Significant is the court's reference to *Ex parte McJunkins*, 954 S.W.2d 39 (Tex.Crim.App. 1997), in which the court held the defendant's "decisions not to request a severance, and to accept the imposition of consecutive sentences imposed in a single

criminal action for two offenses arising out of the same criminal episode, were valid *waivers* of his right to concurrent sentences." *Id.* at 41. From this, we are able to glean that the right to written notice of the State's intent to seek a deadly weapon finding is, like the right at issue in *McJunkins,* "waivable only." *See Mendez v. State,* 138 S.W.3d 334, 340 (Tex.Crim.App. 2004).

 Rights that are "waivable only" " 'cannot be forfeited. That is to say, they are not extinguished by inaction alone. Instead, if a defendant wants to relinquish one or more of them, [she] must do so expressly.' " *Sanchez v. State,* 120 S.W.3d 359, 366 (Tex.Crim.App.2003) (quoting *Marin v. State,* 851 S.W.2d 275, 278–79 (Tex. Crim.App.1993)). Accordingly, " '[a]lthough a litigant might give [these rights] up, ... he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently' " and the trial court " 'has an independent duty to implement them absent an effective waiver by [the litigant].' " *Sanchez,* 120 S.W.3d at 366 (quoting *Marin,* 851 S.W.2d at 280). " 'As a consequence, failure of the judge to implement them at trial is an error which might be urged on appeal whether or not it was first urged in the trial court.' " *Sanchez,* 120 S.W.3d at 366 (quoting *Marin,* 851 S.W.2d at 280). We therefore hold Tellez's trial counsel's failure to object in the trial court did not waive her right to complain on appeal that the trial court erred in entering a deadly weapon finding that was not charged or requested before she entered her original plea. Nor did Tellez do so by her conduct.

Unlike Minott, Tellez did not agree to a plea bargain that expressly included the entry of an affirmative finding of a deadly weapon. To the contrary, although Tellez's plea bargain contains a blank to the left of "Affirmative Finding of Deadly Weapon or 3G offense, Defendant not eligible for supervision under CCP 42.12, Sec. 3," the blank is not checked. The plea bargain further provides that the "State will make no recommendation o[n] [Tellez's] deferred adjudication/community supervision application." This was a promise the State could not legitimately make if it then intended to seek a deadly weapon finding. Since Tellez was charged with felony possession and had applied for regular probation, community supervision was a sentencing option that would not be available if the trial court entered an affirmative finding. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp. 2004). And there is no evidence in the record that Tellez's trial counsel discussed the deadly weapon issue with Tellez, much less obtained her agreement to intentionally relinquish or abandon her right to timely notice. We therefore conclude that neither Tellez by her conduct, nor her trial counsel by his failure to object, waived Tellez's right to complain on appeal that the trial court erred in entering a deadly weapon finding that was not charged or requested before she entered her original plea.[2]

### TIMELINESS OF THE STATE'S NOTICE

 Tellez argues "the time to seek the deadly weapon finding was either in the indictment itself, or upon timely notice prior to the entry of the plea bargain agreement." In response, the State argues "[t]he fault in [Tellez's] argument is that it fails to account for the fact that the trial [c]ourt served as the [trier] of fact at the punishment phase along with the fact that

---

**2.** As a consequence of this holding, we reject Tellez's second complaint that her trial counsel was ineffective in failing to object in the trial court to the entry of a deadly weapon finding.

the sentencing phase is the proper stage in which to address the issue." In so doing, the State presents us with a red herring. Tellez does not complain that the deadly finding was made during the punishment phase; rather, as she states at several points in her brief, she complains that "[t]he trial court ... enter[ed] a deadly weapon finding that had not been charged or requested prior to the original plea." The parties have not provided, and we have not found, an opinion addressing this issue.

Our research has revealed two cases in which a defendant complained that the trial court erred in entering a deadly weapon finding when his plea bargain agreement was silent on the issue. *See Lister v. State*, 24 S.W.3d 525, 526–27 (Tex.App.-Corpus Christi 2000, pet. ref'd) (holding the court lacked jurisdiction over the appeal but "consider[ing] and rul[ing] on [the] issue" "in the interest of justice"); *Alexander v. State*, 868 S.W.2d 356, 360 (Tex.App.-Dallas 1993, no pet.) (addressing the defendant's issue that "he lacked notice because" "the plea bargain agreement was silent on the deadly weapon finding"). However, in both of these cases the indictment gave the defendant notice that the State intended to seek a deadly weapon finding; the notice requirement was thus met. *See Lister*, 24 S.W.3d at 527 ("In the case before us the indictment alleged the use of a deadly weapon."); *Alexander*, 868 S.W.2d at 362 ("The indictments charging appellant included allegations that he used and exhibited 'a deadly weapon, to wit: a knife.' The indictments gave appellant adequate notice that use of a deadly weapon

was an issue in the case."). That of course is not the case here. The State's indictment of Tellez charged her only with possession with intent to deliver and possession; the indictment did not even mention a deadly weapon.

Lacking in guidance, as we are, we return to the statute that governs the proceedings after deferred adjudication is revoked:

> After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal continue as if the adjudication of guilt had not been deferred.

TEX.CODE CRIM. PROC. ANN. art. 42.12 § 5(b). In short, once revocation and an adjudication of guilt have occurred, "the case stands as it did the moment after the guilty plea was accepted, as though no probation had ever occurred." *Evans v. State*, 690 S.W.2d 112, 114–15 (Tex.App.-El Paso 1985, pet. ref'd). If we go back to the moment in time after Tellez's plea was accepted, the State had not given any notice that it intended to seek a deadly weapon finding. We therefore hold the trial court erred when, at the conclusion of the punishment hearing, it entered a deadly weapon finding. *See, e.g., Patterson v. State*, 138 S.W.3d 643, 647 (Tex.App.-Dallas 2004, no pet.).[3]

"Providing no notice is constitutional error." *Id.* (citing *Ex parte Minott*, 972 S.W.2d at 762). "Thus, we must reverse unless we determine beyond a reasonable doubt that the error did not con-

---

**3.** Indeed, this holding may be constitutionally mandated. *See State v. Torres*, 805 S.W.2d 418, 421 (Tex.Crim.App.1991) (holding that in a non-jury trial jeopardy attaches when both sides announce ready and the defendant enters a plea to the charging instrument); *Ex parte Jones*, 39 S.W.3d 724, 725 (Tex.App.- Beaumont 2001, pet. ref'd) (same); *Duke v. State*, 2 S.W.3d 512, 515 (Tex.App.-San Antonio 1999, no pet.) (same); *Hinojosa v. State*, 875 S.W.2d 339, 342 (Tex.App.-Corpus Christi 1994, no pet.) (holding that trial commences at the same time jeopardy attaches).

tribute to punishment." *Patterson,* 138 S.W.3d at 647 (citing TEX.R.APP. P. 44.2(a)). We cannot do so here. As Chief Justice Thomas recognizes in *Patterson,* although "the finding d[oes] not operate to lengthen appellant's sentence, it d[oes] impact the 'character' of the punishment in that it affect[s] [her] parole eligibility." *Id.* at 648. We therefore modify the judgment to delete the deadly weapon finding and affirm the judgment as modified. *See id.*