OPINION


No. 04-03-00853-CR

Jessica L. TELLEZ,
Appellant

v.

The STATE of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2002-CR-2826
Honorable Pat Priest, Judge Presiding



 
Opinion by:    Sarah B. Duncan, Justice
 
Sitting:            Alma L. López, Chief Justice (concurring in the judgment only)
Sarah B. Duncan, Justice
Phylis J. Speedlin, Justice
 
Delivered and Filed:   June 29, 2005

AFFIRMED AS MODIFIED
            Jessica Tellez appeals the judgment revoking her deferred adjudication community
supervision, convicting her of possession of a controlled substance of one to four grams with the
intent to deliver, fining her $1000, sentencing her to five years in the Texas Department of Criminal
Justice – Institutional Division, and finding that she “used or exhibited a deadly weapon in the
commission of the offense or during immediate flight therefrom.” We hold the State’s failure to give
Tellez notice of its intent to seek a deadly weapon finding before her plea was accepted precluded
the trial court from entering a deadly weapon finding at Tellez’s adjudication hearing. We therefore
modify the judgment to delete the deadly weapon finding and, as so modified, affirm.
Factual and Procedural Background
            According to the evidence introduced at Tellez’s plea hearing, when the police executed a
search warrant on December 18, 2001 at 1003 Essex, they apprehended Jessica Tellez in her
bedroom and found three bags containing cocaine, one bag containing marijuana, a palmscale, empty
Ziploc baggies, and a loaded handgun. Tellez was subsequently indicted for possession with intent
to deliver and possession of a controlled substance (cocaine) of one to four grams. The indictment
does not allege that Tellez used or exhibited a deadly weapon during the course of committing either
offense or from immediate flight therefrom.
            After Tellez applied for community supervision, she and the State entered into a plea bargain
agreement. Under the agreement, Tellez agreed to plead guilty or nolo contendere, to allow the State
to prove its case by written stipulations, to pay restitution for drug testing, and to undergo a TAIP
evaluation; the State agreed to proceed on the first count only (possession with intent to deliver) with
punishment assessed at five years and to “make no recommendation o[n] [Tellez’s] deferred
adjudication/community supervision application.” Outside the agreement, Tellez and the State agreed
to a $1000 fine and 300 hours of community service. The plea bargain form contains a blank to the
left of “Affirmative Finding of Deadly Weapon or 3G offense, Defendant not eligible for supervision
under CCP 42.12, Sec. 3”; but the blank is not checked. 
            At the ensuing plea hearing on July 1, 2002, Tellez pleaded no contest to possession with
intent to deliver; and the trial court accepted her plea. After the State introduced the waiver and
stipulations, the trial court found “the evidence is sufficient to sustain a finding of guilt” but “h[e]ld
in abeyance any finding at this point in time until [it] g[o]t a report from the Probation Office on
those matters outside the plea bargain.” After receiving that report, at a July 22, 2002 hearing, the
trial court adopted defense counsel’s recommendation and placed Tellez on deferred adjudication
for five years. 
            On May 8, 2003, the State moved to revoke Tellez’s community supervision and adjudicate
her guilt, alleging that Tellez violated the first condition of her probation by committing the offense
of assault. On August 29, 2003, the State filed its Notice of Intent to Seek an Affirmative Finding
of the Use or Exhibition of a Deadly Weapon. During the ensuing hearing, Tellez was not asked to,
and therefore did not, enter a plea regarding the deadly weapon allegation in the State’s Notice.
Nonetheless, after Tellez pleaded “true” to the alleged violation and the State presented its evidence,
the trial court found Tellez guilty of possession with intent to deliver, then assessed her punishment
at five years and made an affirmative deadly weapon finding. Consequently, Tellez “must serve a
longer period, without consideration of good conduct time, before [she] may be released on parole.”
Coleman v. State, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004) (citing Tex. Gov’t Code Ann. §
508.145(d) (Vernon 2004)). Tellez appeals, making two arguments: first she argues that the trial
court erred in making a deadly weapon finding that was not charged or requested before she entered
her original plea; and second, in anticipation of the State’s waiver argument, she argues that her trial
counsel was ineffective in failing to object to the deadly weapon finding in the trial court.
Jurisdiction
            The State first argues that we lack jurisdiction over Tellez’s appeal because the trial court’s
Rule 25.2(d) certificate specifically states “this order is not appealable.” But this statement is not
only incorrect, it is misleading. What the trial court’s certificate in fact states is “this criminal case
... is not a plea-bargain case, and the defendant has the right of appeal ... except ... this is an
adjudication of guilt following deferred adjudication and this order is not appealable.” When read
in context, “this order” plainly refers only to the order adjudicating guilt; thus, the trial court’s
certification properly recognizes that Tellez may appeal “aspects of the ‘second phase to determine
punishment.’” Kirtley v. State, 56 S.W.3d 48, 51 (Tex. Crim. App. 2001). 
            We recognize a deadly weapon finding is not a part of a sentence for purposes of determining
whether the State has the right to appeal its omission under article 44.01(b), which permits “[t]he
[S]tate ... to appeal a sentence in a case on the ground that the sentence is illegal.” Tex. Code Crim.
Proc. Ann. art. 44.01(b) (Vernon Supp. 2004); State v. Ross, 953 S.W.2d 748, 752 (Tex. Crim. App.
1997) (“hold[ing] for art. 44.01(b), ... a deadly weapon finding is not part of a sentence”). But the
issue before us, for jurisdictional purposes, is not whether Tellez “appeal[s] a sentence”; the question
is whether Tellez appeals “aspects of the ‘second phase to determine punishment.’” Kirtley, 56
S.W.3d at 51. We hold that she does. See Luken v. State, 780 S.W.2d 264, 268 (Tex. Crim. App.
1989) (observing “that ‘[a]n affirmative finding can be and is perhaps more suited to be a
punishment issue’”).
Waiver
            Before we proceed to the merits of Tellez’s first complaint, we must first address the State’s
argument that Tellez waived her complaint by failing to object in the trial court.
            It is clear the State must provide a defendant with written notice of its intent to seek a deadly
weapon finding; but it is equally clear the required notice can be waived. See Ex parte Minott, 972
S.W.2d 760 (Tex. Crim. App. 1998). As the court stated in Minott: “As in McJunkins, a litigant
waives any complaint as to not receiving notice in written form when he agrees to a deadly weapon
finding as part of a negotiated plea.” Id. at 762. Significant is the court’s reference to Ex parte
McJunkins, 954 S.W.2d 39 (Tex. Crim. App. 1997), in which the court held the defendant’s
“decisions not to request a severance, and to accept the imposition of consecutive sentences imposed
in a single criminal action for two offenses arising out of the same criminal episode, were valid
waivers of his right to concurrent sentences.” Id. at 41. From this, we are able to glean that the right
to written notice of the State’s intent to seek a deadly weapon finding is, like the right at issue in
McJunkins, “waivable only.” See Mendez v. State, 138 S.W.3d 334, 340 (Tex. Crim. App. 2004).
            Rights that are “waivable only” “‘cannot be forfeited. That is to say, they are not extinguished
by inaction alone. Instead, if a defendant wants to relinquish one or more of them, [she] must do so
expressly.’” Sanchez v. State, 120 S.W.3d 359, 366 (Tex. Crim. App. 2003) (quoting Marin v. State,
851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993)). Accordingly, “‘[a]lthough a litigant might give
[these rights] up, ... he is never deemed to have done so in fact unless he says so plainly, freely, and
intelligently’” and the trial court “‘has an independent duty to implement them absent an effective
waiver by [the litigant].’” Sanchez, 120 S.W.3d at 366 (quoting Marin, 851 S.W.2d at 280). “‘As a
consequence, failure of the judge to implement them at trial is an error which might be urged on
appeal whether or not it was first urged in the trial court.’” Sanchez, 120 S.W.3d at 366 (quoting
Marin, 851 S.W.2d at 280). We therefore hold Tellez’s trial counsel’s failure to object in the trial
court did not waive her right to complain on appeal that the trial court erred in entering a deadly
weapon finding that was not charged or requested before she entered her original plea. Nor did Tellez
do so by her conduct.
            Unlike Minott, Tellez did not agree to a plea bargain that expressly included the entry of an
affirmative finding of a deadly weapon. To the contrary, although Tellez’s plea bargain contains a
blank to the left of “Affirmative Finding of Deadly Weapon or 3G offense, Defendant not eligible
for supervision under CCP 42.12, Sec. 3,” the blank is not checked. The plea bargain further
provides that the “State will make no recommendation o[n] [Tellez’s] deferred
adjudication/community supervision application.” This was a promise the State could not
legitimately make if it then intended to seek a deadly weapon finding. Since Tellez was charged with
felony possession and had applied for regular probation, community supervision was a sentencing
option that would not be available if the trial court entered an affirmative finding. See Tex. Code
Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2004). And there is no evidence in the record
that Tellez’s trial counsel discussed the deadly weapon issue with Tellez, much less obtained her
agreement to intentionally relinquish or abandon her right to timely notice. We therefore conclude
that neither Tellez by her conduct, nor her trial counsel by his failure to object, waived Tellez’s right
to complain on appeal that the trial court erred in entering a deadly weapon finding that was not
charged or requested before she entered her original plea.



                                               Timeliness of the State’s Notice
            Tellez argues “the time to seek the deadly weapon finding was either in the indictment itself,
or upon timely notice prior to the entry of the plea bargain agreement.” In response, the State argues
“[t]he fault in [Tellez’s] argument is that it fails to account for the fact that the trial [c]ourt served
as the [trier] of fact at the punishment phase along with the fact that the sentencing phase is the
proper stage in which to address the issue.” In so doing, the State presents us with a red herring.
Tellez does not complain that the deadly finding was made during the punishment phase; rather, as
she states at several points in her brief, she complains that “[t]he trial court ... enter[ed] a deadly
weapon finding that had not been charged or requested prior to the original plea.” The parties have
not provided, and we have not found, an opinion addressing this issue.
            Our research has revealed two cases in which a defendant complained that the trial court
erred in entering a deadly weapon finding when his plea bargain agreement was silent on the issue.
See Lister v. State, 24 S.W.3d 525, 526-27 (Tex. App.–Corpus Christi 2000, pet. ref’d) (holding the
court lacked jurisdiction over the appeal but “consider[ing] and rul[ing] on [the] issue” “in the
interest of justice”); Alexander v. State, 868 S.W.2d 356, 360 (Tex. App.–Dallas 1993, no pet.)
(addressing the defendant’s issue that “he lacked notice because” “the plea bargain agreement was
silent on the deadly weapon finding”). However, in both of these cases the indictment gave the
defendant notice that the State intended to seek a deadly weapon finding; the notice requirement was
thus met. See Lister, 24 S.W.3d at 527 (“In the case before us the indictment alleged the use of a
deadly weapon.”); Alexander, 868 S.W.2d at 362 (“The indictments charging appellant included
allegations that he used and exhibited ‘a deadly weapon, to wit: a knife.’ The indictments gave
appellant adequate notice that use of a deadly weapon was an issue in the case.”). That of course is
not the case here. The State’s indictment of Tellez charged her only with possession with intent to
deliver and possession; the indictment did not even mention a deadly weapon.
            Lacking in guidance, as we are, we return to the statute that governs the proceedings after
deferred adjudication is revoked:
After an adjudication of guilt, all proceedings, including assessment of punishment,
pronouncement of sentence, granting of community supervision, and defendant’s
appeal continue as if the adjudication of guilt had not been deferred.

Tex. Code Crim. Proc. Ann. art. 42.12 § 5(b). In short, once revocation and an adjudication of guilt
have occurred, “the case stands as it did the moment after the guilty plea was accepted, as though
no probation had ever occurred.” Evans v. State, 690 S.W.2d 112, 114-15 (Tex. App.–El Paso 1985,
pet. ref’d). If we go back to the moment in time after Tellez’s plea was accepted, the State had not
given any notice that it intended to seek a deadly weapon finding. We therefore hold the trial court
erred when, at the conclusion of the punishment hearing, it entered a deadly weapon finding. See,
e.g., Patterson v. State, 138 S.W.3d 643, 647 (Tex. App.–Dallas 2004, no pet.).



            “Providing no notice is constitutional error.” Id. (citing Ex parte Minott, 972 S.W.2d at 762).
“Thus, we must reverse unless we determine beyond a reasonable doubt that the error did not
contribute to punishment.” Patterson, 138 S.W.3d at 647 (citing Tex. R. App. P. 44.2(a)). We cannot
do so here. As Chief Justice Thomas recognizes in Patterson, although ‘the finding d[oes] not
operate to lengthen appellant’s sentence, it d[oes] impact the ‘character’ of the punishment in that
it affect[s] [her] parole eligibility.” Id. at 648. We therefore modify the judgment to delete the deadly
weapon finding and affirm the judgment as modified. See id.
 
Sarah B. Duncan, Justice
Publish