NO. 07-10-00081-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL D

 



AUGUST
25, 2010

 



 

THEODORE EDWARD WHITTLEY, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 100TH DISTRICT COURT OF CARSON
COUNTY;

 

NO. 4005; HONORABLE RICHARD DAMBOLD, JUDGE



 



 

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 

 

MEMORANDUM OPINION

 

Appellant Theodore Edward Whittley appeals his conviction and sentence of seven years
confinement in prison for the possession of pseudoephedrine with the intent to
manufacture methamphetamine.[1]  We will affirm.

Background

            Appellant
and Holly Mesneak were passengers in a vehicle driven
by Leonard Kane.  An officer executed a
traffic stop of the vehicle.  Kane was
unable to produce a driver’s license. 
The officer described Kane as shaking and “very fidgety.”  Appellant and Mesneak
also were shaking and would not look at the officer.  Mesneak told the
officer she borrowed the vehicle but could not identify the lender.  Appellant told the officer they were going to
visit a friend of Mesneak’s.   

After the officer saw Kane attempt to
discard a baggie containing a white powder, and after a drug detection dog
alerted on the vehicle, the officer searched its interior and trunk.  Appellant had been seated in the back
seat.  There the officer found a
five-gallon gasoline can and a hose with a funnel duct-taped to one end.  In the trunk, the officer found various
materials, including 162.74 grams of pseudoephedrine.  A Department of Public Safety forensic
scientist opined at trial that pseudoephedrine in this quantity was for
production of methamphetamine. 
Apparently in the trunk, the officer found two glass containers filled
with unidentified liquids.  The officer
recovered thirty-nine items from the vehicle which he opined would be useful in
manufacturing and delivering illegal drugs. 
He further opined the occupants of the vehicle were preparing to
manufacture methamphetamine.  The three
occupants were arrested and transported to the county jail.  There, Mesneak told
the officer that she, appellant and Kane planned to steal anhydrous ammonia and
manufacture methamphetamine.

Appellant was indicted for the
third-degree felony offense of transporting anhydrous ammonia with intent to
manufacture methamphetamine.[2]  On the State’s motion, the trial court signed
an order amending the indictment to charge possession of pseudoephedrine with
intent to manufacture methamphetamine. 
Appellant was convicted of the indicted offense and sentenced to seven
years confinement.  Appellant
appeals.

Analysis

Appellant raises two issues on
appeal.  First, he argues the indictment
was “invalid.” Second, he asserts the evidence was legally and factually
insufficient to support the verdict.  

Amendment of the Indictment

Appellant asserts the indictment was
invalid because it was not properly amended and even had it been properly
amended it charged appellant with a different statutory offense for which he
was not indicted by the grand jury.  On
these grounds, appellant concludes the trial court lacked jurisdiction to try
the case.  Appellant did not raise these
objections in the trial court but argues they are fundamental in character and
may be raised for the first time on appeal. 
We disagree. 

The Texas Constitution guarantees a
person accused of a felony offense the right to indictment by a grand
jury.  Tex. Const. art.
I, § 10; Cook v. State, 902 S.W.2d
471, 475 (Tex.Crim.App. 1995).  An indictment is “a written instrument
presented to a court by a grand jury charging a person with the commission of
an offense.”  Tex.
Const. art. V, § 12(b); Teal v. State, 230 S.W.3d 172, 183 (Tex.Crim.App.
2007).  To constitute an
indictment within this definition, an instrument must charge a person with the
commission of an offense.  Cook, 902 S.W.2d at
477.  “The presentment of an
indictment or information to a court invests the court with jurisdiction of the
cause.”  Tex. Const.
art. V, § 12(b).  “Some defects . . . render the instrument a
non-indictment.”  Duron v. State, 956 S.W.2d 547, 550 (Tex.Crim.App.
1997) (citing Cook, 902 S.W.2d at
478).  Such “defects
[are] of the type that would make it impossible for the defendant to know with
what offense he had been charged.” 
Duron, 956 S.W.2d at 550.   Otherwise, “[i]f
the defendant does not object to a defect . . . of form or substance in an
indictment . . . before the date on which [trial begins,] he waives and forfeits the right to object . . . and he may
not raise the objection on appeal . . . .” 
Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005); Hoitt v. State, 30
S.W.3d 670, 674 (Tex.App.--Texarkana 2000, no pet.).  An indictment may not be amended over a
defendant’s objection as to form or substance if the amended indictment charges
the defendant with an additional or different offense.  Tex. Code Crim. Proc. Ann.
art. 28.10(c) (Vernon 2006).

Appellant originally was indicted for
transporting anhydrous ammonia in April 2008. 
In June 2009, the State filed its motion to amend the indictment.  The motion specified the requested amending
language charging appellant with possession of pseudoephedrine with intent to
manufacture methamphetamine.  The court
granted the motion by written order in July 2009.  The court’s order restates, in its entirety,
the indictment as amended.[3]  The record contains no objection by
appellant.  Rather the case proceeded to
trial on November 30.  The indictment in
its original form named appellant and charged him with an offense.  The indictment therefore vested jurisdiction
in the trial court.  Appellant’s
complaints of the trial court’s amendment procedure and the charge of a
different offense, regardless of merit, did not retrospectively render the
indictment void and strip the trial court of jurisdiction.  In other words, the indictment invested
jurisdiction of appellant’s case in the trial court.  Within the scope of that jurisdiction the
amending procedure and language, if erroneous, were not fundamental errors but
complaints for the consideration, in the first instance, of the trial
court.  Absent a sufficient objection and
express or implicit ruling by the trial court, nothing is preserved for
appellate review.  See Tex. Code Crim. Proc. Ann. arts. 1.14(b) (Vernon 2005) &
28.10(c) (Vernon 2006); Tex. R. App. P. 33.1; Sanchez v. State, 120 S.W.3d 359, 367 (Tex.Crim.App.
2003) (“any error in the charging instrument must be objected to in a timely .
. . and specific manner, and any unobjected-to error
in the instrument is not ‘fundamental’”). 

Appellant’s first issue is overruled.

Sufficiency of the Evidence

            By
his second issue, appellant contends the evidence of guilt was legally and
factually insufficient to support his conviction.  His challenge focuses on the evidence of
appellant’s knowing possession of the pseudoephedrine. 

Proof of the indicted offense
required the State establish that appellant, with intent to unlawfully
manufacture a controlled substance (methamphetamine), possessed[4] a
chemical precursor (pseudoephedrine). 
Tex. Health & Safety Code Ann. §§ 481.002(51)(O)
and 481.124(a)(3) (Vernon 2010).

A person commits a possessory offense only if he
voluntarily possesses the prohibited item. 
Tex. Penal
Code Ann. § 6.01(a) (Vernon 2003).  “Possession is a voluntary act if the
possessor knowingly obtains or receives the thing possessed or is aware of his
control of the thing for a sufficient time to permit him to terminate his
control.”  Id.
at § 6.01(b).  

Evaluating the sufficiency of evidence
in other prosecutions under § 481.124, courts have applied case law on
possession of a controlled substance.  See Scott
v. State, 253 S.W.3d 736, 743 (Tex.App.--Amarillo
2007, pet. refused) (applying links analysis in charge error evaluation and in evidentiary
sufficiency review); Wootton v. State, 132 S.W.3d 80, 86-87 (Tex.App.--Houston [14th Dist.] 2004, pet. refused)
(reviewing sufficiency of evidence of knowing possession of anhydrous
ammonia).  We will apply that body of
case law here.  

To prove unlawful possession of a
controlled substance, the State must establish the accused exercised actual
care, custody, control, or management over the contraband and knew the matter
possessed was contraband.  See
Tex. Health & Safety Code Ann. §§ 481.002(38), 481.115(a) (Vernon 2003
& Supp. 2009); Evans v. State, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006); Poindexter v. State, 153 S.W.3d
402, 405 (Tex.Crim.App. 2005).  Absent an admission by the accused, the
knowledge element of a possessory offense must be inferred.  Gant v.
State, 989 S.W.2d 428, 433 (Tex.App.--Houston
[14th Dist.] 1999, no pet.); United
States v. Richardson, 848 F.2d 509, 514 (5th Cir. 1988) (“proof that
possession of contraband is knowing will usually
depend on inference and circumstantial evidence”).

It is not necessary for the State to
prove the accused maintained exclusive possession of the contraband; rather,
joint possession is sufficient to sustain a conviction.  Cude v. State, 716 S.W.2d 46, 47 (Tex.Crim.App. 1986). 
If the accused did not maintain exclusive control of the location of the
contraband, however, the State must offer additional, independent facts linking
the accused to the contraband.  Poindexter, 153 S.W.3d
at 406; Evans, 202 S.W.3d at
162.  The presence or proximity of the
accused to the contraband, when combined with other direct or circumstantial evidence, may be sufficient to establish control,
management, custody, or care beyond a reasonable doubt if the proof amounts to
more than a strong suspicion or probability. 
Evans, 202
S.W.3d at 161.  Ultimately, it is
the logical force of the evidence that is dispositive.  See id.
at 162 (discussing links analysis).

In reviewing issues of legal
sufficiency, we view the evidence in the light most favorable to the verdict to
determine whether a rational fact finder could have found each element of the
offense beyond a reasonable doubt.  Swearingen
v. State, 101 S.W.3d 89, 95 (Tex.Crim.App. 2003);
Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App.
2001) (citing Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979)).  If, based on all the evidence,
a reasonably minded jury must necessarily entertain a reasonable doubt of the
defendant’s guilt, due process requires that we reverse and order a judgment of
acquittal.  Swearingen, 101 S.W.3d
at 95 (citing Narvaiz
v. State, 840 S.W.2d 415, 423 (Tex.Crim.App.
1992)).  

This standard gives full play to the
responsibility of the trier of fact to resolve
conflicts in the testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Jackson, 443 U.S. at 319; 99 S.Ct. at
2789.  See also Hooper v. State, 214
S.W.3d 9, 15 (Tex.Crim.App. 2007) (juries are
permitted to draw multiple reasonable inferences as long as each inference is
supported by the evidence presented at trial). 
The trier of fact is the sole judge of the
weight and credibility of the evidence.  Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex.Crim.App. 2000). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the fact-finder. Dewberry v. State, 4 S.W.3d 735,
740 (Tex.Crim.App. 1999).  We must resolve any inconsistencies in the
evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex.Crim.App.
2000).  Each fact need not point directly
and independently to the guilt of the appellant, as long as the cumulative
force of all the incriminating circumstances is sufficient to support the
conviction.  Hooper, 214 S.W.3d at 13.  

A factual sufficiency review of the
evidence is “barely distinguishable” from the legal sufficiency review under Jackson v. Virginia.  Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App.
2006).  A factual sufficiency
review considers whether the evidence supporting guilt, though legally
sufficient, is so weak that the jury’s verdict seems clearly wrong and
manifestly unjust, or evidence contrary to the verdict is such that the jury’s
verdict is against the great weight and preponderance of the evidence.  Id.; Watson v. State, 204
S.W.3d 404, 414-15 (Tex.Crim.App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). 
In a factual sufficiency review, we again consider all of the evidence,
but now in a neutral light.  Marshall, 210 S.W.3d
at 625; Watson, 204 S.W.3d at
414. We must also discuss the evidence that, according to the appellant, most
undermines the jury’s verdict.  Laster v. State, 275 S.W.3d
512, 518 (Tex.Crim.App. 2009); Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.
2003).  

            Mesneak testified for the State.  She told the jury that appellant helped her
and Kane manufacture methamphetamine on three or four prior occasions.  The three usually manufactured the drug in a
car on country roads.

The night before their arrest, Mesneak, Kane, and another man, Ashley Sandlin, occupied a
farmhouse.  Mesneak
and Kane argued and Kane left.  He picked
up appellant and sent him to get anhydrous ammonia.  Appellant was not successful.  While Kane and appellant were gone, Mesneak and Sandlin cooked methamphetamine at the
farmhouse.  Appellant joined them there.

The next day, Mesneak
testified, she, appellant, and Kane were together “to cook some meth.” When
asked why, Mesneak responded they “wanted to get
high.”  Mesneak
agreed that Kane “did most of the cooking.” 
Before departing the farmhouse, Kane loaded Mesneak’s
1982 Oldsmobile with items used to manufacture methamphetamine.  He was indecisive whether to leave the items
at the farmhouse, put them in the vehicle’s passenger compartment for easy
disposal in case of police attention, or stow them in the vehicle’s trunk.  Ultimately, Kane “decided to throw it all in
the trunk.”  Nothing necessary for
manufacturing methamphetamine was left at the farmhouse.  Kane placed the gasoline can and hose with
attached funnel in the back seat.  Mesneak testified the gasoline can and hose are used to
gather anhydrous ammonia for manufacturing methamphetamine. Kane placed other
items including pseudoephedrine and batteries in the trunk.  Kane, appellant, and Mesneak
intended to use the items placed in the vehicle to manufacture methamphetamine
that day.

On direct examination, Mesneak affirmed that appellant knew what was in the
vehicle because he witnessed Kane load the vehicle.  But on cross-examination, she agreed she
might have confused Sandlin with appellant and agreed she was not certain
appellant saw Kane place pseudoephedrine in the trunk of the vehicle.

With the vehicle loaded, the three
set out. Mesneak brought the methamphetamine she
cooked the night before. The day’s plan to cook methamphetamine involved first
going to the house of Mesneak’s friend to sell
methamphetamine cooked the previous night, using the proceeds to buy gasoline
for the car, and then locating anhydrous ammonia.  Mesneak further
agreed that once appellant obtained the anhydrous ammonia, Kane would cook the
methamphetamine.  As on prior occasions,
appellant’s intended compensation for assisting in manufacturing the
methamphetamine was a share of the drug. 
On cross-examination, Mesneak acknowledged she
did not hear Kane tell appellant a “meth lab” was stashed in the trunk of the
vehicle but she did hear him indicate they were going to collect anhydrous
ammonia.  Mesneak
also acknowledged it was possible that appellant thought he was to obtain
anhydrous ammonia so Kane could “come back and cook later.”  She agreed she did not know the extent of
appellant’s knowledge.

The arresting officer testified of
the nervousness of appellant and the other occupants of the vehicle.  Appellant, like Kane, was shaking.  Appellant told the officer that he, Kane, and
Mesneak were going to visit a friend of Mesneak’s.  The
officer observed Kane tear a plastic bag containing methamphetamine.  The back seat appellant occupied also
contained the items used, according to Mesneak, to
obtain anhydrous ammonia for the manufacture of methamphetamine.  The vehicle did not belong to appellant and
at the time of arrest he did not possess a key to its locked trunk
compartment.  Testimony established the
presence in the vehicle at the time of arrest of every item needed to
manufacture methamphetamine, except anhydrous ammonia.  It is not uncommon, according to the officer,
to manufacture methamphetamine in a vehicle. In the opinion of the officer,
appellant, Kane, and Mesneak were preparing to
manufacture methamphetamine.  On
cross-examination, the officer agreed that he had no evidence of appellant’s
knowledge that the trunk contained pseudoephedrine.  He did not smell anhydrous ammonia during the
stop and did not smell the inside of the container in the vehicle’s back
seat.  A DPS forensic scientist opined at
trial that pseudoephedrine in the quantity recovered was for production of
methamphetamine.

Appellant supports his argument with Blackman v. State, No. 01-08-00138-CR,
2009 Tex. App. Lexis 9717 (Tex.App.--Houston [1st
Dist.] Dec. 22, 2009, pet. granted).  Blackman was the front seat passenger in a
rented minivan occupied by two others. 
He was convicted of possessing cocaine found by officers behind the
driver’s seat in a closed shoe box under a blanket.  On appeal Blackman challenged the legal
sufficiency of the evidence he exercised care, custody, or control over the
cocaine.  Id. at *10.  The appellate court agreed.  It observed the State’s case rested entirely
on Blackman’s presence in the vehicle.  Id. at *28.  In determining the evidence did not supply
the “additional independent factors and circumstances” necessary to
sufficiently link Blackman to the cocaine, the court found no evidence Blackman
had knowledge of the contents of the box or exercised control of the box.  Id. at *22, *29.  

Here, evidence tying appellant to the
pseudoephedrine in the vehicle’s trunk is not limited to the
circumstantial.  The jury was free to
believe Mesneak’s direct evidence of appellant’s role
in the planned manufacture of methamphetamine including his knowledge of the
large amount of pseudoephedrine in the trunk. 


The evidence gave the jury little if
any reason to doubt appellant’s intention to join in the manufacture of
methamphetamine with Kane and Mesneak.  We find that a rational juror, exercising the
responsibility to resolve conflicting testimony, could have found appellant
knew of the presence in the vehicle’s trunk of the components necessary for
methamphetamine manufacture, including the pseudoephedrine precursor.  His knowledge is evidenced also by his demeanor
when the officer stopped the vehicle. 
And, given the evidence of appellant’s joinder
with Kane and Mesneak in the vehicle after the
loading of the items necessary for the manufacture, his expressed knowledge of
their destination, his ready access to the gasoline can and hose for anhydrous
ammonia, his role in the day’s intended manufacture and his intended share of
its product, we further find that a rational juror could find appellant
exercised control, management, custody or care over the pseudoephedrine
precursor.  

Viewing the evidence in the light
most favorable to the verdict we conclude the evidence is legally sufficient to
establish the charged offense.  Moreover,
when all the evidence is viewed in a neutral light, we conclude proof of
appellant’s guilt of the charged offense is neither so obviously weak as to
undermine confidence in the jury’s determination, nor such that it is greatly
outweighed by contrary evidence.  The
evidence is factually sufficient.  We
overrule appellant’s second issue.

Conclusion

Having overruled appellant’s two
issues, we affirm the judgment of the trial court.

 

                                                                                                James
T. Campbell

                                                                                                            Justice

 

Do not publish.  

            








 











[1]  Tex. Health
& Safety Code Ann. § 481.124 (a)(3) (Vernon 2010).





[2]  Tex. Health
& Safety Code Ann. § 481.124(a)(1) (Vernon
2010).  





[3] An appendix to the State’s brief also contains a copy
of the original indictment interlineated to state the charge for which
appellant was tried.  See Head v. State, 299 S.W.3d 414,
437-38 (Tex. App.--Houston [14th Dist.] 2009, pet. refused); cf. Ledezma v. State, No. 07-09-0372-CR, 2010 Tex.
App. Lexis 5600, at *1-3 (Tex.App.--Amarillo July 16,
2010, n.p.h.) (mem. op.,
not designated for publication) (concerning
requirements for proper amendment of indictment). The copy contains what appear
to be the trial judge’s initials.  On the
day of trial, before the reading of the indictment, the trial court judge made
reference to his amendment of the indictment by interlineation.  According to the State’s brief, the
interlineated copy “was never refiled with the clerk’s
office, nor was it rescanned by the clerk’s office.”  Because the document is not part of the
appellate record, we may not afford it any consideration in resolving
appellant’s issues.  See Booth v. State, 499 S.W.2d 129, 135 (Tex.Crim.App.
1973) (appellate court is not authorized to consider documents attached to
appellate brief which are not part of the record).  





[4] Because § 481.124(a) does not specify a culpable
mental state as to the element of possession, § 6.02(c) of the Penal Code
requires a mental state of at least recklessness.  See Scott
v. State, 253 S.W.3d 736, 741 (Tex.App.--Amarillo
2007, pet. refused) (concluding § 481.124(a) requires possession of anhydrous
ammonia be accompanied by a culpable mental state).