**Judy Lynn CRAWFORD, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 01–92–00047–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 29, 1996.

Order Overruling Rehearing Dec. 5, 1996.

Discretionary Review Refused Feb. 27, 1997.

---

Jan W. Fox, Houston, for appellant.

David Weeks, Kay Douglas, Huntsville, for appellee.

Before TAFT, COHEN and HEDGES, JJ.

## OPINION ON REMAND

TAFT, Justice.

Appellant, Judy Lynn Crawford, was convicted of capital murder and sentenced to life imprisonment. This Court affirmed the conviction in *Crawford v. State*, 863 S.W.2d 152 (Tex.App.—Houston [1st Dist.] 1993) (Cohen, J., concurring and dissenting).[1] Echoing Justice Cohen's dissenting opinion, the Court of Criminal Appeals reversed this Court's decision. *Crawford v. State*, 892 S.W.2d 1, 3–4 (Tex.Crim.App.1994) (holding trial court's denial of appellant's proper request for production of Crime Stoppers report amounted to absolute bar to potential *Brady*[2] material in violation of Fourteenth Amendment). On remand, we abated the appeal and ordered the trial court to hold a hearing, as provided in *Thomas v. State*, 837 S.W.2d 106, 114 (Tex.Crim.App.1992),[3] to determine the avail-

---

**1.** The facts are set out in detail in this Court's original opinion. *Crawford*, 863 S.W.2d at 155–58, 165.

**2.** *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) (holding that defendant's due process rights are violated

when prosecution does not disclose exculpatory evidence in its possession).

**3.** *Thomas* was decided after the trial in this case. It held that the statutory confidentiality safeguards of Crime Stoppers reports must yield to a

ability and materiality of the Crime Stoppers report. The trial court conducted the hearing and found the Crime Stoppers report is unavailable, having been destroyed by a computer virus in 1991. The only remaining issue is the proper remedy for the *Thomas* error in this case.

## The Error

 The Due Process Clause of the Fourteenth Amendment requires the State to disclose any information in its possession which is material to either guilt or punishment. *See Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97. Impeachment evidence is included within this rule. *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985); *Thomas*, 837 S.W.2d at 112. Appellant had a right to an *in camera* inspection of Officer Rick Wiatt's Crime Stoppers report to determine whether it contained exculpatory, or *Brady*, material. *Crawford*, 892 S.W.2d at 3; *see also Thomas*, 837 S.W.2d at 114. The trial court refused appellant's request for production of Wiatt's crime stoppers report.

## The Remedy

Appellant requests a new trial as remedy for the *Thomas* error. She argues the failure of the trial court to order an *in camera* inspection of the Crime Stoppers report is *per se* reversible error. In the alternative, she argues the failure to order an *in camera* inspection is reversible error under *Harris v. State*, 790 S.W.2d 568 (Tex.Crim.App.1989). The State initially argued that any error was harmless because appellant was attempting to impeach Officer Wiatt on a collateral matter. Now the State urges application of a harmless error analysis under *Shelby v. State*, 819 S.W.2d 544 (Tex.Crim.App.1991).

 Under a harmless error analysis, this Court must reverse appellant's conviction if it is not satisfied beyond a reasonable doubt that the error did not contribute to the conviction or to the punishment. *See* TEX. R.APP.P. 81(b)(2). In this case, we need only consider whether the error contributes to appellant's conviction, because the State chose not to seek the death penalty. When the State does not seek the death penalty, a defendant's capital murder conviction automatically results in a life prison term. TEX.PENAL CODE ANN. § 12.31(b) (Vernon 1994). Punishment cannot be affected, because the trial court has no discretion.

 We agree with the State that the rule in *Shelby* is a more appropriate standard for our analysis because it deals with the improper *exclusion* of evidence, not the improper *admission* of evidence, as in *Harris*. *See Young v. State*, 891 S.W.2d 945, 948 (Tex.Crim.App.1994). Under *Shelby*, when conducting a harmless error analysis, this Court must first assume the damaging potential of the Crime Stoppers report is fully realized. 819 S.W.2d at 550. While appellant's request for production arose in an attempt to determine whether Officer Wiatt had made a particular entry in the Crime Stoppers report, the full extent of the damaging potential far exceeds the absence of that entry. Appellant was not only entitled to disclosure of the Crime Stoppers report to check for such an entry, but also for any *Brady* material. *Brady* material includes both exculpatory and impeachment evidence. *Bagley*, 473 U.S. at 676, 105 S.Ct. at 3380; *Thomas*, 837 S.W.2d at 112. The trial court's failure to order an *in camera* inspection infringed on appellant's right to the disclosure of information under the rule in *Brady*. *Crawford*, 892 S.W.2d at 3. The scope of the *in camera* inspection contemplated by the *Thomas* holding includes all *Brady* material. *See Thomas*, 837 S.W.2d at 114. Here, there is no report to inspect and, thus, no factual findings regarding materiality by the trial court.

Through no fault of appellant, the record is insufficient to evaluate the full damaging potential of the report. Because it is impossible to satisfy this first part of the *Shelby* analysis, we cannot conclude beyond a reasonable doubt that the *Thomas* error did not contribute to appellant's conviction. We do not reach appellant's argument based on *per se* reversible error because we are required to reverse appellant's conviction under a harmless error analysis.

defendant's due process rights under *Brady*.

*Thomas*, 837 S.W.2d at 113.

## Conclusion

Accordingly, we reverse the trial court's judgment and remand this case for a new trial.

## ORDER ON REHEARING

In its motion for rehearing, the State urges that the unavailability of the Crimestopper's Report is analogous to the "failure to preserve evidence" cases which require a showing of bad faith for a finding of denial of due process. The State claims that the testimony at the hearing on remand established that the report had been unavailable from the latter part of 1991 due to a virus. Thus, when the case was tried in December 1991, the trial court would have been unable to examine the report to determine if it contained exculpatory material.

■ We agree with the State that, if the record showed the report became unavailable prior to trial, then the proper approach would be to treat the report as destroyed or lost evidence and determine whether the unavailability was the result of good or bad faith. However, we have examined the record and it supports the trial court's finding that the report was either destroyed before trial when the virus attacked the computer or after trial when information on the computer was purged.

The State relies on the following question and answer from the hearing on remand:

Q: And you wouldn't have been able to get to it [the Crimestopper's Report] in late 1991 could you?

A: No, sir.

Admittedly, taken out of context, this excerpt supports the State's position that the Crimestopper's Report was unavailable in December of 1991 when appellant's trial took place. However, other portions of the statement of facts demonstrate that the phrase "late 1991" could not be pinned down:

Q: And you said late '91, is there any method by which you could give us a more exact time period?

A: I guess I don't know—I don't know if the Computer Warehouse kept any files on when I was there. Since they didn't charge me anything for it I don't know if they keep any files on it, either.

Q: Would you have known whether it would have been before Thanksgiving? Would you remember that?

A: It would just be speculating, sir.

We observe that the trial court remarked that the Report probably wasn't available at the time (of trial when) the witness was on the stand, while admitting uncertainty about the matter. This is consistent with the trial court's finding that the Report "was destroyed during the pendency of this matter either by the virus or by the purging which was necessary because of the virus." It is also consistent with the trial court's conclusion the Report is no longer available and "was destroyed either by a virus in the latter part of 1991 or by a purging of the information in May, 1992 which was necessary action due to the virus."

The issue in this case is a close one; its resolution ultimately turns on who bears the burden. We have previously concluded the trial court erred in denying access to the Crimestopper's Report, so the burden is effectively on the State to show harmlessness beyond a reasonable doubt. Tex.R.App.P. 81(b)(2). Because the trial court could not conclude with certainty, based on the evidence presented, that the Report was unavailable at the time of trial in December 1991, the State did not meet its burden of showing the error was harmless beyond a reasonable doubt.

Accordingly, we overrule the State's motion for rehearing.