NUMBER
13-01-666-CR

 

                                 COURT
OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

 

 

ENRIQUE VALENZUELA,
JR.,                                                         Appellant,

 

                                                             v.

 

THE STATE OF TEXAS,                                                                    Appellee.

 

 

 

             On
appeal from the County Court At Law No. 1

                          of
Cameron County, Texas.

 

 

 

                              O
P I N I O N

 

                 Before
Justices Hinojosa, Castillo, and Garza

                           Opinion
by Justice Castillo

 








A jury convicted appellant Enrique Valenzuela of
driving while intoxicated (DWI). 
Valenzuela received a six month jail sentence, suspended for twelve
months for community supervision.[1]  We affirm.

I.  ISSUES
PRESENTED

In his first issue, Valenzuela asserts he was
entitled to a new trial because the State, during the motion for new trial
hearing, did not prove harmlessness of its failure to turn over dispatch
logs.  In his second, third, fourth, and
fifth issues, Valenzuela complains of improper jury argument.  In his sixth issue, Valenzuela asserts the
trial court abused its discretion by not ordering the Spanish to English
translation of the audio portion of the DWI videotape. 

II. 
BACKGROUND








The State called two police officers to
testify.  Valenzuela testified in his own
defense and called two other witnesses. 
Valenzuela also called the arresting officer.              The
arresting officer was sergeant Martin Salinas, Jr., a police officer with the
Port Isabel Police Department. 
Salinas  testified he was on
patrol during the graveyard shift on September 27, 2000, when he observed
Valenzuela driving a white Jaguar on a public highway, and traveling at a high
rate of speed.  Radar clocked the car=s speed at 49 miles per hour in a 30 mile-per-hour
zone at about 2:00 a.m.  When approaching
an intersection, Valenzuela took a wide left turn from the inside lane, rather
than the turning lane, without slowing down. 
Salinas observed Valenzuela's vehicle travel against traffic onto the
shoulder and accelerate.  Salinas
testified he observed Valenzuela commit numerous traffic violations, including
the following: (1) speeding; (2) making an illegal left turn; (3) traveling
against traffic on an eastbound lane; (4) traveling against traffic on a
northbound lane; and (5) failing to maintain a single marked lane.  As Salinas proceeded after the vehicle, he
clocked it traveling 98 miles per hour, and still accelerating.  Valenzuela did not immediately stop, although
Salinas signaled him to stop with the patrol car=s
flashing lights and siren.  When he did
stop, Valenzuela parked partially on the traffic lane and shoulder.  Salinas further testified that Valenzuela:
(1) lost his balance while walking; (2) admitted he had a few drinks; (3)
slurred his speech; (4) had red, bloodshot eyes; (5) had a strong odor of
alcohol on his breath; (6) said he was the owner of a business either to
intimidate the officer or impress him; (7) failed the horizontal gaze
nystagmous test; and (8) refused a breath test. 
Salinas did not administer any other field sobriety tests because he was
concerned Valenzuela might fall and hurt himself.  When called by Valenzuela, Salinas testified
he knew of no person other than police officer Juan Cantu who administered a
field sobriety test.

Police officer Juan Cantu testified he administered
field sobriety tests on Valenzuela at the booking station.  Although Valenzuela understood English, Cantu
began the testing in English but changed to Spanish when Valenzuela requested
it.  Cantu testified that Valenzuela's
test performance was unsatisfactory.  The
trial court admitted the videotape of the testing.  








In his defense, Valenzuela testified he was part
owner of a bar and grill and participated in its operation.  On the day he was arrested, he arrived at his
place of business at about 9:00 p.m., ate, and drank four beers.  He met with an English-speaking businessman
there, and, after Valenzuela helped calculate and complete the bank deposit and
close the restaurant, the two left in one vehicle.  Valenzuela made the night bank deposit, and
the two proceeded to view property in which the businessman was
interested.  Valenzuela took him to his
hotel, where the two visited a while longer. 
Valenzuela left, admittedly, in a rush to get home.  

Valenzuela testified that after being stopped,
Salinas violently removed him from his vehicle by his shirt.  Valenzuela testified he agreed to do sobriety
tests on videotape to show that he was in perfect condition.  He testified that he suffered from heart
problems, diabetes, and had a malformation of his feet. 

Valenzuela's orthopedic surgeon, Dr. Oliver
Achleitner, testified he examined Valenzuela on May 4, 2001.  He testified that Valenzuela had problems
with his feet that would affect his balance. 

Valenzuela's employee Gustavo Morales testified he
observed Valenzuela at the restaurant throughout the time Valenzuela was
there.  Morales testified Valenzuela was
not intoxicated when he left the restaurant. 


The jury returned a verdict of guilty.  The trial court assessed punishment at six
months' confinement in jail probated for one year, and a fine of $650.00.  The trial court ordered Valenzuel to take a
twelve-hour DWI class within sixty days. 


III.  STATE'S
FAILURE TO PRODUCE DISPATCH LOGS








In his first issue, Valenzuela asserts the trial
court should have granted the motion for new trial because: (1) the prosecutor
did not comply with court-ordered discovery by failing to turn over police
dispatch logs; and (2) the State failed to show evidence of harmlessness.[2]  The State acknowledges its affirmative duty
to disclose exculpatory or impeachment evidence that is material to guilt or
punishment under Brady v. Maryland, 373 U.S. 83, 87 (1963) ("A
prosecutor has an affirmative duty to turn over material, favorable evidence to
the defense.").  However, the State
argues Valenzuela failed to: (1) show how the outcome of the trial would have
been different; and (2) preserve error. 
The parties do not dispute: (1) the State did not provide Valenzuela the
dispatch log; and (2) Valenzuela found out about the dispatch log for the first
time during Salinas' testimony. 
Valenzuela limits his first issue to the argument that, at the motion
for new trial, the State failed to show harmlessness under Crawford v. State,
934 S.W.2d 744 (Tex. App.BHouston [1st Dist.] 1996, pet. ref=d.).

A.  The Record








Valenzuela argues that we should order a new trial
because the State did not carry its burden to show harmlessness.  The issue of the dispatch logs arose during
defense cross-examination of Salinas, the arresting officer.  During cross-examination, Salinas testified
that officer Pete Zuniga was dispatched to the scene to transport Valenzuela to
the city jail.  Salinas testified he did
not document in his report Zuniga's presence at the scene, but the Port Isabel
police department kept a patrol log which would reflect Zuniga's dispatch to
the scene.  The following ensued:  

[Defense Counsel]: Is it a record generated by PIPD?

[Salinas]: It's a log, patrol log.

[Defense Counsel]: There's a patrol log on this?

[Salinas]: Anytime any officer does anything on duty
and they call to the dispatch, they log down what's going on or what that
officer does.

 

[Defense Counsel]: But that's not here in the DA's
file, is it?

[Salinas]: I don't know, sir.

[Defense Counsel]: Who would have this log out
there?  Who is the person that has that?

 

[Salinas]: That would be the City of Port
Isabel.  You may speak with Lt. Marchan
and I'm sure he could get you a copy.  

 

According to Valenzuela, under Crawford, the
proper harmless error analysis for failure to disclose allegedly exculpatory
material is to assume that the damaging potential of the evidence was fully
realized.  He argues that trial counsel's
testimony during the motion for new trial hearing establishes harm.  The State responds in the context of a Brady
complaint.  








At the motion for new trial hearing, Valenzuela's
trial counsel testified that the State should have turned over the dispatch
logs under the trial court's discovery order. 
In short, trial counsel testified that the dispatch logs were necessary
for impeachment.  Based on this argument,
we construe Valenzuela's issue liberally, as we must.  See Tex.
R. App. P. 38.9.  Because
Valenzuela complains that the State did not disclose favorable impeachment
evidence, we construe Valenzuela's issue as a complaint under Brady  for the State's failure to provide favorable
evidence that he could have used for impeachment of the testifying
officers.  

B. Standard and Scope of Review








The primary duty of all prosecuting attorneys is to
see that justice is done, not merely to seek convictions.  Tex.
Code Crim. Proc. Ann. art. 2.01 (Vernon Supp. 2004-05).  Prosecutors are prohibited from suppressing
facts or secreting witnesses who may establish the innocence of the
accused.  Id.  A defendant in a criminal case must be granted
a new trial when evidence tending to establish the defendant's innocence has
been intentionally withheld, thus preventing its production at trial.  Tex.
R. App. P. 21.3(e).  The State
violates due process when it suppresses evidence in its possession favorable to
an accused when the evidence is material, either to guilt or to punishment,
irrespective of the good faith or bad faith of the prosecution.  Wyatt v. State, 23 S.W.3d 18, 27 (Tex.
Crim. App. 2000); see also Little v. State, 991 S.W.2d 864, 866 (Tex.
Crim. App. 1999); McFarland v. State, 928 S.W.2d 482, 511 (Tex. Crim.
App. 1996) (per curiam).  The failure to
produce material evidence favorable to an accused constitutes a probability
sufficient to undermine confidence in the outcome of the proceeding.  Thomas v. State, 841 S.W.2d 399, 404
(Tex. Crim. App. 1992).  Where the trial
court grants a motion for discovery, and the State fails to disclose evidence
ordered disclosed by the trial court, the evidence should not be admitted if it
is offered by the State during the trial.  Lindley v. State, 635 S.W.2d 541, 543
(Tex. Crim. App. [Panel Op.] 1982).  To
prevail on a Brady claim when the State's disclosure is tardy, the
defendant must show that the late disclosure prejudiced him.  Wyatt, 23 S.W.3d at 27.  The defendant must show a reasonable
probability that, had the State disclosed the evidence to the defense earlier,
the proceeding would have had a different outcome.  Id. 

Impeachment evidence is considered exculpatory
evidence.  Ex parte Richardson, 70
S.W.3d 865, 872 (Tex. Crim. App. 2002). 
Our review of a prosecutor's alleged failure to disclose exculpatory
evidence requires us to:  (1) employ a
materiality standard rather than a constitutional harmless‑error standard
in evaluating the evidence; and (2) determine the materiality of the evidence
in light of all other evidence properly introduced at trial.  Hampton v. State, 86 S.W.3d 603, 612
(Tex. Crim. App. 2002).  We consider any
adverse effect that the prosecutor's non‑disclosure might have had on the
preparation or presentation of the accused's case.  Thomas, 841 S.W.2d at 405.  We assess the possibility that an adverse
effect might have occurred in light of the totality of the circumstances and
with an awareness of the difficulty of reconstructing in a post‑trial
proceeding the course that the defense and the trial would have taken had the
defense not been misled by the prosecutor's failure to disclose.  Id. 
To make this determination, we examine the alleged error in the context
of the overall strength of the State's case.  Id.  

 








C. The Law Applicable to the State's Duty to
Disclose Exculpatory Evidence

1. Preservation of Error








Because preservation "is a systemic requirement
that a first‑level appellate court should ordinarily review on its own
motion," we will begin with the State's contention that Valenzuela did not
preserve this issue for our review.  See
Jones v. State, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997) (en banc).  Initially, to preserve a question for
appellate review, it is the obligation of the complaining party to make a
timely, specific objection.  Tex. R. App. P. 33.1(a).  To be timely, the objection must have been
made at the earliest possible opportunity. 
Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991) (en
banc).  In Marin, the Court of
Criminal Appeals identified three categories of rights possessed by criminal
defendants which are as follows: (1) absolute requirements and prohibitions
which cannot be waived or forfeited; (2) rights which must be implemented
unless expressly waived; and (3) rights which will be implemented only upon
request.  Marin v. State, 851
S.W.2d 275, 279‑80 (Tex. Crim. App. 1993) (en banc); see Sanchez v.
State, 120 S.W.3d 359, 366 (Tex. Crim. App. 2003) (en banc).  The third category consists of
"forfeitable" rights.  Sanchez,
120 S.W.3d at 366.  A party must insist
upon the implementation of these rights by objection, request, motion, or some
other behavior calculated to exercise the right in a manner comprehensible to
the system's impartial representative, usually the trial judge.  See id.  The trial judge as an institutional
representative has no duty to enforce forfeitable rights unless requested to do
so.  Id.  Thus, when a defendant fails to assert his
forfeitable rights at trial, no error attends failure to enforce them and none
is presented for review on appeal.  See
id.  

We conclude that a defendant's right to Brady
evidence is a forfeitable right.  We also
conclude that a Brady claim procedurally defaults where the accused
fails to request a continuance.  See
Taylor v. State, 93 S.W.3d 487, 502 (Tex. App.BTexarkana 2002, pet. ref'd); see also Lindley,
635 S.W.2d at 544; Zule v. State, 802 S.W.2d 28, 33 (Tex. App.BCorpus Christi 1990, pet. ref'd).  When the State's failure to disclose Brady  material is discovered during trial, the
accused is entitled to a recess to obtain production of the material, even if
the defense did not make pretrial efforts to obtain it.  Crawford v. State, 892 S.W.2d 1, 4 (Tex.
Crim. App. 1994) (en banc).  Nonetheless,
the accused then must request a postponement or seek a continuance.  Otherwise, the accused waives any complaint
of surprise in the State's failure to disclose the material earlier.  Lindley, 635 S.W.2d at 544; Zule,
802 S.W.2d at 33.  

2.  The
Criteria for Disclosure








A Brady violation occurs if: (1) the State
failed to disclose evidence, regardless of the prosecution's good or bad faith;
(2) the withheld evidence is favorable to the defendant; and (3) the evidence
is material, that is, there is a reasonable probability that had the evidence
been disclosed, the outcome of the trial would have been different.  Ex parte Richardson, 70 S.W.3d at 870;
Thomas, 841 S.W.2d at 404.  The
prosecution has no duty to turn over evidence not in its possession or not
known to exist.  State v. Blanco,
953 S.W.2d 799, 802‑03 (Tex. App.BCorpus Christi 1997, pet. ref'd) (citing Hafdahl
v. State, 805 S.W.2d 396, 399 n.3 (Tex. Crim. App. 1990)).  The prosecution does have a duty to learn of
any favorable evidence known to others acting in the case on the State's
behalf, including the police.  Blanco,
953 S.W.2d at 802‑03 (citing Kyles v. Whitley, 514 U.S. 419, 419
(1995)).

Favorable evidence is any evidence, if disclosed and
used effectively, that may make the difference between conviction and
acquittal. Thomas, 841 S.W.2d at 404. Favorable evidence includes both
exculpatory and impeachment evidence. 
Wyatt, 23 S.W.3d at 27; Thomas, 841 S.W.2d at 404; Taylor,
93 S.W.3d at 500.  Exculpatory evidence
is that which tends to justify, excuse, or clear the accused of fault or guilt.
 Wyatt, 23 S.W.3d at 27; Thomas,
841 S.W.2d at 404; Taylor, 93 S.W.3d at 500.   Impeachment evidence is that which disputes,
disparages, denies, or contradicts a witness's testimony.  Thomas, 841 S.W.2d at 404.  Evidence is material if it creates a
probability sufficient to undermine confidence in the outcome of the
proceeding.  Id.








Thus, to prevail on a Brady claim, an
appellant must show that the State's non-disclosure or tardy disclosure
prejudiced the defense.  Little,
991 S.W.2d at 867.  To show prejudice, an
appellant must show a reasonable probability that the result of the proceeding
would have been different had the State timely disclosed the evidence to the
defense.  Id. at 866.  A "reasonable probability" is a
"probability sufficient to undermine confidence in the outcome."  Id. 
Thus, a due process violation has occurred if a prosecutor:  (1) fails to disclose evidence; (2) favorable
to the accused; (3) which creates a probability of a different outcome.  Wyatt, 23 S.W.3d at 27  (citing U.S. v. Bagley, 473 U.S. 667,
682 (1985)).  Evidence withheld by a
prosecutor is "material" if there is "a reasonable probability
that, had the evidence been disclosed to the defense, the outcome of the
proceeding would have been different." 
Id.    

D. Brady Analysis

a. Preservation of Error

The record shows that after Salinas testified about
the dispatch logs, cross-examination proceeded on other aspects of the State's
case.  The defense did not object to the
non-disclosure or request a continuance. 
Rather, after the State rested its case during the culpability phase of
the trial, the defense urged an oral motion for directed verdict, in part,
because the "dispatch logs were not produced to defense counsel as
requested as part of our motion for discovery in this case.  They were ordered to bring these down
here."  The defense argued that
since the dispatch logs were not produced, "[I]t's materially prejudiced the
defense of my client in this case," and requested the trial court to
dismiss on that basis.  The trial court
denied the  motion.








We conclude that when the State's failure to
disclose Brady material was discovered during trial, Valenzuela did not
preserve error.  He did not object at
trial and he did not request a postponement or continuance.  Tex.
R. App. P. 33.1; Sanchez, 120 S.W.3d at 366; Lindley, 635
S.W.2d at 544; Zule, 802 S.W.2d at 33. 
Even if we construed Valenzuela's motion for directed verdict as an
objection, he still did not preserve error. 
The Brady material requested was, according to trial counsel's
testimony at the motion for new trial hearing, necessary for impeachment of the
police officers.  Valenzuela did not
request a postponement or continuance.  Sanchez,
120 S.W.3d at 366; Lindley, 635 S.W.2d at 544; Zule, 802 S.W.2d
at 33.  

b.  Motion for
New Trial Evidence

Even if he had preserved error, we conclude that
Valenzuela has still not met his burden under Brady, because he has not
shown that: (1) the State suppressed evidence in its possession; or (2) a
reasonable probability existed that, had the State disclosed the dispatch logs
to the defense, his trial would have had a different outcome.    

Valenzuela filed a motion for new trial asserting,
in part, Brady error.  The purpose
of the motion for new trial hearing is to fully develop the issues raised in
the motion for new trial.  Sandoval v.
State, 929 S.W.2d 34, 36 (Tex. App.BCorpus Christi 1996, pet. ref'd).  Valenzuela asserts the trial court erred in
overruling his amended motion for new trial. 
Even though Valenzuela presented several grounds in the motion, he
limited his evidence at the motion for new trial hearing to the prosecutor's
argument in brief, and to ground six in the motion which states:

6.  The
prosecutor presents error in not turning over to the defense the dispatch logs
as directed by the court.  When the state
did not produce a crime-stopper's report as ordered, the state bore the burden
of showing harmlessness.  Crawford v.
State, 934 S.W.2d 744 (Tex. App.BHouston [1st Dist.] 1996, pet. ref=d.).

 








The sole witness at the motion for new trial hearing
was Valenzuelas's trial counsel who testified he "had a motion for
discovery and inspection of documents in the case" which he urged before
trial.  To his understanding, the judge "ordered
everything to be produced."  Trial
counsel testified that:  (1) the State
should have turned over the dispatch logs under the trial court's discovery
order; (2) he would have used the dispatch logs to impeach the testimony of
Salinas because of inconsistencies in his testimony regarding the presence of
another officer at the scene; and (3) Valenzuela was harmed by the
non-disclosure of the dispatch log because of the inconsistencies in the
State's evidence and (a) assuming the log showed a third officer on the scene,
the jury could decide Salinas and Cantu, the testifying officers, were not
credible, and (b) assuming the log showed a third officer was not on the scene,
the jury could decide Salinas was not credible. 
He added:

I was insisting on progress notes from the police
officers, that they be brought down. 
There was an officer who testified for the Port Isabel Police
Department, when I had him on cross examination, that supposedly there was this
possible third police officer.  There
were two officers that had testified, and there was a third one that he thought
might have been out there at the scene with him.  

 

On cross-examination, he testified about dispatch
logs that would have revealed the identity of this possible third police
officer, and at that moment is whenBwhen I found out about that, because in my opinion,
it was part of the motion for discovery. 
I immediately asked the CourtBin fact, I moved for a dismissal and also a
mistrial, which were both denied.[3]

 








Counsel also testified that not obtaining the
dispatch logs harmed Valenzuela because the logs would have revealed the
identity of a third officer on the scene who counsel could have called to
testify.  Counsel explained, "Maybe
he could have testified about whether or not this officer had performed or
demonstrated field sobriety tests," and he could have testified about
Valenzuela's state of mind or condition when stopped.  The evidence shows that officer Salinas
identified Pete Zuniga as the officer on the scene to transport
Valenzuela.  Officer Salinas testified
that he saw Valenzuela's vehicle at a time when Salinas was talking with
another officer, however, that officer was not at the scene of Valenzuela's
arrest:          

[Defense Counsel]: 
Okay.  Now, on Texas Highway 100
and 48, you're over here at the corner. 
Are you by yourself or is there another police car talking to you?

 

[Salinas]: 
There was another officer there.

 

[Defense Counsel]: 
You guys are chit-chatting there on that corner?

 

[Salinas]: 
We're talking, yes, sir.

 

[Defense Counsel]: 
Okay.  Who was the other officer
you were talking to?

 

[Salinas]: 
Officer Johnny Cantu.

 

[Defense Counsel]: 
Did he in any way go out there with you on Highway 48 after [appellant]
passed?

 

[Salinas]: 
Yes, he did.

 

[Defense Counsel]: 
He went out there with you?

 

[Salinas]: 
After the vehicle had been stopped.

 

[Defense Counsel]: 
Okay.  Where is that noted in the
report that he was out there with you?

 

[Salinas]: 
I'm not sure.  I'd have to look at
the report to see if it is.








After
counsel approached the witness, the cross-examination continued:

 

[Defense Counsel]: 
I mean, correct me if I'm wrong, but I looked at the reports and they
show that this was a one-man stop by you two miles out on 48 and that Mr. Cantu
gets in the picture on the video that the jury's going to see.

 

[Salinas]: 
Yes, sir.  No, sir, it does not
state that on there.

 

[Defense Counsel]: 
And it's your testimony now for the first time in front of the jury and
that I find out about it, that now Mr. Cantu is out there at the scene on
Highway 48, two miles out?

 

[Salinas]:  He
was asked toBI'm sorry.  It
was not Officer Johnny Cantu; it was Officer Pete Zuniga, and he was asked to
go out there to transport the prisoner from my location to the city jail.

 

[Defense Counsel]: 
Does the report reflect that Pete Zuniga was out there at the scene?

 

[Salinas]: 
No, sir, it does not.

 

* * * 

[Defense Counsel]: 
Would that have been important to have noted that?

 

[Salinas]: 
Not to me, sir.

 

[Defense Counsel]: 
It's not important to you to note down witnesses that might be out at
the scene?

 

[Salinas}: 
Not at the time and not for that particular report.

 








At trial, Cantu testified he administered sobriety
tests at the police station and the testing was videotaped.  Thus, the record establishes that Salinas
arrested Valenzuela, Zuniga transported him, and that Cantu conducted sobriety
tests at the station.  The record also
establishes that Valenzuela testified in his own defense.  During his direct testimony, Valenzuela did
not testify whether Zuniga performed field sobriety tests at the scene.  Valenzuela's only testimony concerning the
transport officer was that he told the transport officer about his medical
conditions. 

c. 
Disposition

We have concluded Valenzuela forfeited appellate
review.  Even so, to prevail on a Brady
claim when the State's disclosure is tardy the defendant must show that the
late disclosure prejudiced him.  Wyatt,
23 S.W.3d at 27.  The defendant must show
a reasonable probability that, had the State disclosed the evidence to the
defense earlier, the proceeding would have had a different outcome.  Id. 
On this record, we conclude that Valenzuela has not met his burden under
Brady because he has not shown that: (1) the State suppressed evidence
in its possession; or (2) a reasonable probability existed that, had the State
disclosed the dispatch logs to the defense earlier, Valenzuela's trial would
have had a different outcome.  Id.  

We overrule Valenzuela's first issue.

IV. 
JURY ARGUMENT

In his second, third, and fourth issues
presented, Valenzuela complains of improper prosecutor argument during the
culpability phase of the trial.  The
State counters that the arguments were permissible.  The defense argued first, followed by the
State.

A. 
Scope and Standard of Review








The law provides for and presumes a fair
trial, free from improper argument by the prosecuting attorney.  Borjan v. State, 787 S.W.2d 55, 56
(Tex. Crim. App. 1990) (en banc).  An
assertion of improper jury argument requires us to review the record in its
entirety to determine whether any erroneous statements were made, and if so,
whether they were so prejudicial as to deprive appellant of a fair and
impartial trial.  Willis v. State,
785 S.W.2d 378, 385 (Tex. Crim. App. 1989). 
There are four permissible areas of jury argument, which are as
follows:  (1) summation of the evidence;
(2) reasonable deduction from the evidence; (3) response to the defendant's
argument; and (4) plea for law enforcement. 
See Rocha v. State, 16 S.W.3d 1, 21 (Tex. Crim. App. 2000)
(citing Lagrone v. State, 942 S.W.2d 602, 619 (Tex. Crim. App. 1997) (en
banc), cert. denied, 522 U.S. 917); Wilson v. State, 938 S.W.2d
57, 59 (Tex. Crim. App. 1996) (en banc); Gaddis v. State, 753 S.W.2d
396, 398 (Tex. Crim. App. 1988). 








A prosecuting attorney is permitted in his
argument to draw from the facts in evidence all inferences which are
reasonable, fair and legitimate, but he may not use the jury argument to place
before the jury, either directly or indirectly, evidence which is outside the
record.  Borjan, 787 S.W.2d at 57
(citing Jordan v. State, 646 S.W.2d 946, 948 (Tex. Crim. App.
1983)).  A prosecutorial remark concerning
the harm defendant may do to others in the future has been upheld as a proper
plea for law enforcement.  Pineda v.
State, 2 S.W.3d 1, 11 (Tex. App.BHouston [1st Dist.] 1999, pet. ref'd)
(citing Stone v. State, 574 S.W.2d 85, 90 (Tex. Crim. App. [Panel Op.]
1978)).  The use of an analogy to
emphasize or explain evidence is acceptable. 
Broussard v. State, 910 S.W.2d 952, 959 (Tex. Crim. App.
1995).  Closing arguments are allowed to
explain evidence and answer the arguments of opposing counsel.  Alejandro v. State, 493 S.W.2d 230,
231 (Tex. Crim. App. 1973).  Counsel is
allowed wide latitude to draw inferences from the evidence, so long as the
inferences drawn are reasonable, fair, legitimate, and offered in good
faith.  Gaddis, 753 S.W.2d at
398.       Even
if a prosecutor's jury argument is improper, an instruction by the trial judge
to the jury to disregard the improper argument is usually sufficient to cure
the error.  See Gonzalez v. State,
115 S.W.3d 278, 284 (Tex. App.BCorpus Christi 2000, pet. ref'd).  Even when arguments exceed the boundaries of
the permissible groups, they will not constitute reversible error unless they
are extreme or manifestly improper, violate a mandatory statute, or inject new
facts harmful to the accused into the trial proceeding.  Id. 
Reversible error occurs when a statement is so inflammatory that its
prejudicial effect cannot reasonably be removed by such admonition.  Id. 
The improper remarks must have been a willful and calculated effort on
the part of the State to deprive appellant of a fair and impartial trial.  Id.    








Improper prosecutorial comments and
misstatements are not constitutional errors. 
See Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.
1998).  Thus, in cases concerning
improper argument, the reviewing court looks to three factors to determine
whether reversal is required under Texas Rule of Appellate Procedure 44.2(b),
which are:  (1) the severity or magnitude
of the remarks; (2) the measures taken to cure the misconduct; and (3) the
certainty of conviction absent the misconduct. 
Id. at 259. 

B. 
Preservation of Error

To preserve a question for appellate
review, it is the obligation of the complaining party to make a timely,
specific objection.  Tex. R. App. P. 33.1(a); Simpson v.
State, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003) (failure to object to the
complained‑of jury arguments forfeits the right to raise any alleged
error on appeal).  To be timely, the
objection must be made at the earliest possible opportunity.  Turner, 805 S.W.2d at 431.  The party must pursue the objection to an
adverse ruling.  Id.  A contemporaneous objection must occur each
time the objectionable jury argument is made in order to preserve error.  Cockrell v. State, 933 S.W.2d 73, 84
(Tex. Crim. App. 1996) (en banc); Barnes v. State, 70 S.W.3d 294, 307
(Tex. App.BFort Worth 2002, pet. ref'd).








A defendant's "right" not to be
subjected to incurable erroneous jury argument is one of those rights that is
forfeited by a failure to insist upon it. 
Cockrell, 933 S.W.2d at 89; see Sanchez, 120 S.W.3d at
366.  An appellant's failure to object to
the jury argument forfeits his right to complain about the argument on
appeal.  Cockrell, 933 S.W.2d at
89;  Limas v. State, 941 S.W.2d
198, 203 (Tex. App.BCorpus Christi 1997, pet. ref'd).  But an exception exists to the rule when a
prosecutor's statement is so egregious that an instruction to disregard could
not possibly cure the error.  See Mendoza
v. State, 840 S.W.2d 697, 699 (Tex. App.BCorpus Christi 1992, no pet.) (citing Willis v.
State, 785 S.W.2d 378, 385 (Tex. Crim. App. 1989) (en banc)); see also
Harris v. State, 784 S.W.2d 5, 12 (Tex. Crim. App. 1989) (en banc).  

C.  Comparison
to a Loaded Gun

In his second issue, Valenzuela complains of the
prosecutor's closing argument:

Ladies and Gentlemen, before I go, I want to let you
allBgive you a scenario. 
Remember this: a person who is driving while intoxicated is the same
thing, Ladies and Gentlemen, as getting a gun and loading it and shooting it into
a crowded street.  You don't know if
you're going to hit somebody, but there is a 99 percent chance you will;
okay?  

 

Thank you for your time and your attention, and I
encourage you to come back with the verdict of guilty.  

 

Defense counsel objected to the argument as
violating rule 4.03 of the Texas Rules of Evidence and as an inflammatory
statement to the jury.  The trial court
determined that the objection was untimely. 
We agree.  To be timely, the
objection must be made at the earliest possible opportunity.  Tex.
R. App. P. 33.1(a)(1); Turner,
805 S.W.2d at 431.  Valenzuela has
forfeited our review of his issue.  Cockrell,
933 S.W.2d at 89.        Even if Valenzuela had preserved error, we
conclude the argument was permissible. 
Valenzuela argues that the prosecutor's argument comparing him to a
loaded gun was not based on the evidence, was inflammatory, could not be cured
by instruction, and constituted fundamental error.  The State responds that the argument was a
reasonable deduction from the evidence and a proper plea for law
enforcement.  We agree.








Officer Salinas testified that while in pursuit, he
clocked Valenzuela's speed at 98 miles per hour and climbing.  During cross-examination, Salinas further
testified that Valenzuela's speeds reached up to 111 miles per hour.  The defense reminded the jury twice during
closing argument that, in the videotape, Salinas told Valenzuela, "I
clocked you doing 111" while "His report says 98."  The defense also argued that the roadway was
"not a very easy highway to drive on. 
It's a tough highway.  The hills
that you go over, the curves that you go through . . . ."    

The defense asked Salinas at trial, "And would
it be safe to say that, had you stopped [Valenzuela], he would have made it
home and we would never have been here today?"  Salinas responded, "I wouldn't
know."  The defense asked, "A
person who's driving and speeding would have to have enough control of their
vehicle that they would not threaten anybody in another vehicle,
correct?"  Salinas responded,
"Yes, sir."  The defense
further asked, "[Valenzuela] in this case did not force anybody off the
road, did he?"  Salinas responded,
"No, sir."  

In the context of a jury trial on a charge of
driving while intoxicated where evidence of excessive speed was not disputed
and when Valenzuela admitted to drinking four beers before getting behind the
wheel, the prosecutor's argument was permissible as a reasonable deduction from
the evidence and a plea for law enforcement. 
See Rocha, 16 S.W.3d at 21.  


We overrule Valenzuela's second issue.        

D.  Wealth

In his third issue, Valenzuela states that the
prosecutor's argument repeatedly referring to Valenzuela's wealth violated the
provision of the state constitution guaranteeing due course of law, citing
article I, sections 13 and 19.  








In context, the arguments are:

"Hey, why did you stop me?  I did nothing wrong.  I did nothing wrong."  He was unaware that he was driving 98 miles
per hour.  Is that normal use of your
faculties, Ladies and Gentlemen?  Is it,
that you don=t even notice that you're driving fast?  Give me a break!

 

Everything points to this individual being
intoxicated that night. . . .  I'm talking
about the speeding; I'm talking about being non-responsive on his answers; I'm
talking about the argumentative way [Valenzuela] was responding to
[Salinas].  "I'm the owner of
Bigo's.  I know a lot of important
people."  What does that tell
you?  That he was trying to intimidate
Mr. Salinas, that he thinks that he's above the law; and he has no respect for
the law.  Please!  He wants youByou
know "Once I talk to you, let me go because I'm this type of person.  I'm the owner of Bigo's.  I have money. 
I'm this and that."  Give me
a break!  How important is he?  He's on trial now.

 

Defense counsel objected stating, "That's
outside the record about whether he has money or doesn't have money."  Valenzuela challenges the argument on state
constitutional grounds.  The objection on
appeal does not comport with the objection at trial and, thus, nothing is
presented for review.  Miller v. State,
566 S.W.2d 614, 619 (Tex. Crim. App. 1978); see also Bell v. State,
938 S.W.2d 35, 54-55 (Tex. Crim. App. 1996) (en banc) (per curiam); Barley
v. State, 906 S.W.2d 27, 37 (Tex. Crim. App. 1995) (en banc); Johnson v.
State, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990) (en banc); Rezac v.
State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (en banc).  Appellant did not present his appellate
complaint to the trial court and has forfeited our review.  Tex.
R. App. P. 33.1(a)(1)(A).  

Even if Valenzuela had preserved error, we conclude
the argument was permissible as a response to the defense's closing argument, 








This
is a very important case, Ladies and Gentlemen. 
You know, this is not about money; this is about somebody's
liberty.  This is his day.  This is [Valenzuela's] day today . . . There
has [sic] been insinuations that [Valenzuela] is above the law.  I submit to you that [Valenzuela] is not the
one that thinks he's above the law; it's Martin Salinas who thinks he's above
the law."  

 

Finally, the defense also argued:

 

They
stop him, get him out, and he identifies him, asks him for his license in this
case.  Supposedly,Band we don't have any record of this,Bsupposedly, and you all determine the credibility,
that [Valenzuela] says, "Oh, I'm the owner of [a bar and grill].  I know a lot of important people."  Does that really make sense?  

 

At trial, Salinas testified that
Valenzuela (1) asked him if he knew who he was, (2) said that he knew a lot of
people, and (3) said he was the owner of the bar and grill.  We conclude the prosecutor's argument was in
response to the defense argument and a summation of the evidence.  Thus, the argument was permissible.  Rocha, 16 S.W.3d at 21. 

We overrule
Valenzuela's third issue.

E.  Breath Test 

In his fourth issue,
Valenzuela asserts that the prosecutor's comment on his failure to take the
breath test violated the Fifth Amendment to the U.S. Constitution and article
I, section 10 of the Texas Constitution. 
Valenzuela challenges the prosecutor's argument:

Now,
the best evidence I've got, Ladies and Gentlemen, is this:  If this man wants you to believe that he's
the victim of this case, that he was wrongly accused, Ladies and Gentlemen, why
didn't he take a breath test?  If this
man was so much above the law and he was out to get him, why didn't he take a
breath test?

 








After the argument, the defense objected on the
following grounds:  (1) improper comment;
(2) "past the point of other than commenting on his refusal"; and
(3)  "outside the record."  The trial court overruled the objection.  The argument on appeal does not comport with
the objections at trial.  Miller,
566 S.W.2d at 619.  Valenzuela did not
allow the trial court an opportunity to rule on the errors he presents on
appeal.  See id.; Tex. R. App. P. 33.1(a)(1)(A).  Valenzuela forfeited our review.  

Even assuming that Valenzuela preserved error, the
argument was permissible as a summation of the evidence.  Rocha, 16 S.W.3d at 21.  Officer Salinas testified that Valenzuela
refused the breath test.[4]  Officer Cantu testified that sobriety testing
in the controlled environment was delayed because Valenzuela agreed to take the
breath test, was transported to the facility where he would take the breath
test, and then changed his mind.  The
evidence showed that, ultimately, Valenzuela did not take the breath test.  

We overrule Valenzuela's fourth issue.

F.  Thanking
the Officers

In his fifth issue, Valenzuela complains of the
prosecutor's argument thanking the officers for having made a good arrest as
outside the record and bolstering.  The
prosecutor argued:  

The man was intoxicated.  The man should not have been behind the
wheel, Ladies and Gentlemen.  

 

And before I close, finish, I just want to thank
Officer Juan Cantu and Officer Martin Salinas for making a good arrest that
night because they deserve the credit. 
They kept the streets safe for each and every one of you. 








 

The trial court overruled the defense's
objection.  Prosecutorial argument which
is outside the record and injects personal opinion is improper.  Romo v. State, 593 S.W.2d 690, 694
(Tex. Crim. App. 1980).  A prosecutor may
argue opinions concerning the issues in the case so long as the opinions are
based on the evidence in the record and do not constitute unsworn testimony.  See Wolfe v. State, 917 S.W.2d 270,
281 (Tex. Crim. App. 1996).  We conclude
the complained of argument is permissible and not reversible. 

            Officer Salinas pursued Valenzuela at
speeds at least 98 miles per hour on a dangerous roadway.  Officer Cantu accommodated Valenzuela's
request to take the breath test by transporting him for the test and, upon
Valenzuela's subsequent refusal, proceeded to conduct sobriety testing.  Valenzuela testified at trial that:  (1) Salinas pulled him out of the vehicle by
the shirt; (2) Salinas did not perform field sobriety tests at the scene; and
(3) Salinas was aggressive in addressing Valenzuela.  During closing argument, the defense argued
that Salinas acted as though he was above the law.  The defense further argued, "You've got
two officers saying two different things.  Which one do you believe more?"    








We review, first, that part of the prosecutor's
argument regarding the "good arrest," the officers "deserved
credit," and "They kept the streets safe for each and every one of
you."  We conclude that the argument
is permissible as a reasonable deduction from the evidence and a response to
the defense argument.  We conclude,
however, the prosecutor's statement thanking the officers exceeded the scope of
permissible argument.  Even so, the
argument does not constitute reversible error since the statement is not
manifestly improper, does not violate a mandatory statute, or inject new and
harmful facts into the trial proceedings. 
Borjan, 787 S.W.2d at 57. 

Even so, we proceed with a harm analysis.  Tex.
R. App. P. 44.2(b); Gonzalez, 115 S.W.3d at 285.  A substantial right is affected when an error
has a substantial, injurious effect or influence in determining the jury's
verdict.  Id.  We have considered the Mosley factors,
including the severity of the misconduct, curative measures and the certainty
of the punishment assessed absent the misconduct.  Mosley, 983 S.W.2d at 259.  We cannot conclude the error is
reversible.  The prejudicial effect, if
any, of the prosecutor's thanking the officers was nominal.  The jury assessed a six month jail
sentence.  We cannot conclude that the
prosecutor's remark had a substantial, injurious effect or influence on the
jury's verdict.  Tex. R. App. P. 44.2(b). 

We overrule Valenzuela's fifth issue.

V. TRANSLATION

In his sixth issue, Valenzuela asserts the trial
court erred by not requiring the interpreter to translate the audio on the
videotape from Spanish to English.  The
videotape shows Valenzuela performing the sobriety tests.  Valenzuela relies on Leal v. State, 782
S.W.2d 844, 849 (Tex. Crim. App. 1989) (en banc), for the proposition that the
error constitutes reversible error.  Leal
held that, upon properly preserved objection, the admission in evidence of a
tape recording of a conversation in Spanish without a translation by a sworn
interpreter constituted reversible error. 
Id.   








Valenzuela did not present his current objection to
the trial court.  At the time the State
made its motion to introduce the videotape in evidence, the defense objected
and reminded the trial court of the motion to suppress previously filed and
heard.  However, as we discuss below, the
objection in the motion to suppress is not the same objection argued on appeal.


A.  The Record

The record shows that, after the jury was selected,
the trial court inquired about objections to the videotape.  Referring to the motion to suppress on file,
defense counsel stated his objection: "Based on that he was in custody and
he was being interrogated and he wasn't properly Mirandized."  After hearing arguments, the trial court
reserved ruling on the motion until after she viewed the videotape in chambers,
stating, "I need to determine whether or not there was any interrogation
that occurred prior to him being Mirandized once he was, in fact, in
custody; okay?"  

At trial, once the State moved to admit the
videotape and the trial court asked for objections the defense counsel stated,
"No objections, Judge, except on my motion that I had previously, Judge."  The trial court asked, "On the
audio?"  Defense counsel responded,
"No.  It was after the initial stop,
my argument that at that point he was under custodial interrogation, so
therefore, everything after that is out. 
That's what I want to preserve." 
After stating she had overruled the motion to suppress, the trial court
asked, "But I did tell you that y'all could keep out the audio.  Are you wanting to go on that?"  The defense responded, "No" and
later added, "Judge, I would ask that the video be played in its entirety
before any questioning."   








The videotape was played before the jury.  The trial court asked, "I need to know
from the jury, is there anyone on the jury who does not speak Spanish and who
did not understand parts of that video?" 
The record shows no response.  The
trial court asked, "All right.  So
everyone understood what happened?" 
The record shows there was "nodding of heads."  

Post-trial, Valenzuela filed a motion for summary
action requesting that the trial court direct the official court interpreter to
translate the audio on the videotape admitted in evidence at trial.  However, the motion was filed on February 11,
2002, well after the expiration of the trial court=s plenary power and while the case was on appeal.[5]   

    B. 
Disposition

            We conclude Valenzuela did not
present his complaint to the trial court. 
An objection stating one legal basis may not be used to support a
different legal theory on appeal.  Bell,
938 S.W.2d at 54-55.  Thus, Valenzuela
forfeited review. Tex. R. App. P.
33.1(a).  

We overrule Valenzuela's sixth issue.

VI. 
CONCLUSION

Having overruled Valenzuela's issues on appeal, we
affirm the judgment.  

 

ERRLINDA CASTILLO

Justice

Do not publish.

Tex. R. App. P.
47.2(b).

 

Opinion
delivered and filed








this
30th day of June, 2005.

 

 

 

 

 

 

 

 

 

 











[1] See Tex. Pen. Code Ann.
' 49.04 (Vernon
2003).  

 





[2] The first issue states, "The trial
court erred in allowing defendant's First Amended Motion for New Trial to be
overruled as a matter of law . . . .  The
prosecutor presented error in not turning over to the defense the dispatch logs
as directed by the court . . . .  When
the state did not produce a crime‑stopper's report as ordered, the state
bore the burden of showing harmlessness. 
Crawford v. State, 934 S.W.2d 744 (Tex. App.BHouston [1st Dist.] 1996,
pet. ref'd.)." (Record references omitted).





[3] We have already determined from the record
that the defense did not immediately move for a dismissal and mistrial.





[4]See Tex. Transp. Code Ann.
_ 724.015(1),(2) (Vernon Supp. 2004-05).





[5] We denied Valenzuela's motions to extend
appellate time limits to allow the translation to occur.